## UNITED STATES

v.

**Edward M. JONES, 330 50 0973, Aviation Antisubmarine Warfare Technician Third Class (E–4), U.S. Navy.**

**NMCM 84 3531.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 11 May 1984.

Decided 4 March 1985.

LTCOL M.W. Lucas, USMC, Appellate Defense Counsel.

LT John B. Consevage, JAGC, USNR, Appellate Defense Counsel.

CDR Michael P. Green, JAGC, USN, Appellate Government Counsel.

Before GLADIS, Senior Judge, and COUGHLIN and CASSEL, Judges.

PER CURIAM:

Contrary to his pleas at a special court-martial, appellant was found guilty of one charge and specification alleging the wrongful use of marijuana, in violation of Article 134 of the Uniform Code of Military Justice, (UCMJ), 10 U.S.C. § 934. The military judge sentenced him to be confined at hard labor for 30 days, to be reduced to pay grade E–1, to forfeit $390.00 pay per month for one month and to be discharged with a bad conduct discharge. At trial, appellant moved to suppress the results of a urinalysis that had been performed on a specimen of his urine and that had tested positive for THC. It was contended in this motion that probable cause to seize the urine was the direct result of a prior, illegal search. Before this Court, appellant continues to maintain that position.

## FACTS

The appellant's automobile was stopped and subjected to a command authorized gate search during which a portion of a marijuana cigarette was found in the ashtray. The appellant was not present at the time, having lent his vehicle to friends. After being informed of the incident by base security, appellant's commanding officer determined that there existed probable cause to order appellant to provide a urine sample for drug testing. It was this sample that tested positive for THC and upon which the charge and specification were based.

At trial, all parties entered into the following stipulation:

The inspection of 8 February 1984 was to be conducted in accordance with the procedures set forth in a memorandum dated 1 January 1984. The memorandum, addressed to all law enforcement personnel, states that vehicles will be stopped on a random basis. That determination of randomness was left to the supervisor or the lead police officer present, the same individual tasked with directing the vehicles to the inspection area.

Supervising the inspection on 8 February 1984 was the aforementioned SGT Rockwell; it was his responsibility to select which vehicles were to be 'randomly' stopped. Because there were three inspectors, it was his plan to stop 3 cars for inspection, let three pass, stop the next three, and so on. However whether the second group of three was stopped depended upon the length and scope of inspection for the first three cars and the traffic conditions at the time of inspection.

## STANDING

The government asserts that appellant lacks standing to object to the search of the automobile. We disagree, and find that his continuing proprietory interest was sufficient to grant him standing. In authorizing others to use his car, he abandoned neither this interest in the vehicle, nor his reasonable expectation of privacy therein.

It has long been established that, where law enforcement officials have vio-

lated a citizen's Fourth Amendment rights by performing an unreasonable search, the victim of the search may move to have the illegally obtained evidence suppressed. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Paragraph 152, *Manual for Courts-Martial, 1969 (Rev.).* Not only will the evidence that was seized as a result of the illegal search be excluded, but any derivative evidence will also be excluded as "fruit of the poisonous tree". *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). If a person has a recognizable interest in the place searched, and a reasonable expectation of privacy, then he has standing to seek redress and can benefit from the exclusionary rule. *Rakas v. Illinois,* 439 U.S. 128, 134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The right to seek redress arises from the violation of an individual's substantive Fourth Amendment rights, as well as from his status as a victim of the illegal intrusion. *Rakas v. Illinois, supra.* Despite the fact that he was not actually present at the time of the search, the appellant, as owner of the vehicle, maintained a reasonable expectation of privacy therein under the circumstances of this case. *See United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). Consequently, the appellant had standing to object to the search.

## THE SEARCH

The exclusionary rule was created as a disincentive to law enforcement officials; an attempt to discourage illegal searches and seizures. *See, Mapp v. Ohio,* supra. In this way, an individual's security and privacy is protected from arbitrary intrusions by government officials. *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *United States v. Ortiz,* 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975). The decision as to what constitutes a "reasonable" search, as opposed to an "unreasonable" one, must be based on the underlying factual situation. A balancing approach should be taken,

weighing the overall public interest against an individual's right to be free from governmental invasions of privacy. *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). Unlike the situation involving a search pursuant to a valid search warrant or probable cause, gate and border searches present a much greater potential for abuse. In the context of the armed forces, the courts must balance the sometimes conflicting concepts of this individual right to privacy, with the command's need to promote military preparedness and maintain security on military installations.

To this end, the Court of Military Appeals has upheld, both in concept and practice, the random stopping and searching of vehicles entering military compounds. *United States v. Harris,* 5 M.J. 44 (C.M.A. 1978). Inspections at the entrances and exits of military installations are also allowed under the *Military Rules of Evidence.* M.R.E. Rule 313(b). In *Harris,* the rationale of the Supreme Court's line of border search cases was adopted and seven factors to be considered in reviewing a gate search were weighed. *Harris, supra; See, United States v. Martinez-Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); *Ortiz, supra; Brignoni-Ponce, supra; United States v. Almeida-Sanchez,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973); These include: public need, availability of alternatives, degree of potential for frightening or offending motorists, scope of intrusion, extent of interference with legitimate traffic, amount of discretion involved, and practicality of requiring reasonable suspicion. *Harris, supra* at 55–57. After examination of these factors the Court was "convinced that use of gate searches to deter persons from introducing contraband onto a military installation is an imminently reasonable response to a serious problem affecting the military". *Harris, supra* at 65. However, the Court expressed grave concern that the search must be as unintrusive as possible. They insisted that, when conducting a gate search, the procedure employed "completely removes

the exercise of discretion from persons engaged in law enforcement activities". *Harris* at 65. In defining the breadth of reasonableness, the Court required, among other things, an independent determination of the method of selecting vehicles to be stopped, although it was recognized that it is possible to delegate this authority to a neutral, detached officer who is present at the search scene. *Harris, supra* at 65 n. 30. Also, once an independent, random process has been established, some discretion as to the scope of the search, and other specifics, could be exercised by the official performing the search. *United States v. Dunlap,* 15 M.J. 1041 (N.M.C.M.R.1983); *United States v. Vargas,* 13 M.J. 713 (N.M. C.M.R.1982), *pet. denied,* 14 M.J. 225 (C.M. A.1982); *United States v. Bowles,* 7 M.J. 735 (A.F.C.M.R.1979).

Under the facts before us, it has been stipulated that the Commanding Officer, himself, did not specifically determine which cars were to be stopped. However, he did direct a neutral party, the Director of Security to initiate a program of "random" gate searches. To this end, the Director of Security, on 1 January 1984, promulgated a memorandum setting forth the requirements regarding the random gate inspections ordered by the Commanding Officer. Appellate Exhibit II. The following sections of the memorandum speak directly to the issue of selection of vehicles to be searched.

2. The Commanding Officer has directed continuation of vehicle inspections which are to be conducted on a random basis at times and places scheduled by the Security Director, or in his absence, the Deputy Director.

4. The Shift Supervisor or a Lead Police Officer will be present and direct all inspections. As previously noted, vehicles will be stopped on a random basis. The Supervisor will direct as many vehicles as can be handled in the inspection area. Vehicles will be inspected without regard to decal color or any other selection fac-

tor which would indicate other than a random stop.

In this way, by ordering "random" inspections, the Commanding Officer did actually choose the *method* of selecting vehicles to be stopped. The method was "random". The Director of Security and the supervising law enforcement officer at the search scene could then exercise reasonable discretion in implementing and carrying out this order. They were still bound by the Commanding Officer's order that the vehicles be stopped randomly. Therefore, it was permissible for the law enforcement officer to use his limited discretion in determining how to select cars, so long as they were not stopped arbitrarily, in a way that singled out a particular group, or in any other non-conforming way. Once the individual who is empowered to authorize a search has set forth guidelines, so long as they are reasonable a subsequent exercise of limited discretion will not invalidate an otherwise valid search.

Thus, the resulting issue becomes one of determining whether or not the implementation of the order was properly carried out; was the selection process truly random? At trial, the military judge ruled that the method employed as to selection of appellant's automobile was, in fact, random. We specifically concur in this finding.

Accordingly, we hold that the military judge was correct in his ruling on the Motion to Suppress. We find no error materially prejudicial to the substantial rights of the accused. The findings and sentence, as approved on review below,[1] are affirmed.

1. We take note of, but find no impropriety in the fact that the Convening Authority was also a government witness on the Motion. *See, United States v. Kendricks,* No. 84 2858 (NMCMR 10 January 1985); Paragraph 5, *Manual for Courts Martial, 1969 (Rev.).*