**UNITED STATES, Appellee,**

v.

**Edward M. JONES, Aviation Antisubmarine Warfare Technician Third Class, U.S. Navy, Appellant.**

No. 52,081.

NMCM 84 3531.

U.S. Court of Military Appeals.

July 27, 1987.

For Appellant: *Lieutenant Timothy D. Persons, JAGC, USNR* (argued); *Lieutenant Commander Alvin L. McDonald, JAGC, USN* and *Lieutenant John B. Consevage, JAGC, USNR* (on brief); *Lieutenant Colonel M.W. Lucas, USMC.*

For Appellee: *Lieutenant P.J. Battin, JAGC, USNR* (argued); *Captain Carl H. Horst, JAGC, USN* and *Commander Michael P. Green, JAGC, USN* (on brief); *Captain W.J. Hughes, JAGC, USN.*

*Opinion of the Court*

COX, Judge:

Contrary to his pleas, appellant was convicted by a military judge sitting alone as a special court-martial of wrongful use of marijuana, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. He was sentenced to a bad-conduct discharge, confinement for 30 days, forfeiture of $390.00 pay per month for 1 month, and reduction to pay grade E–1. The findings and sentence were approved by the convening and supervisory authorities, and their action was affirmed by the Court of Military Review. 20 M.J. 594 (1985). We granted review of the following issue raised by appellate defense counsel:

> WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW ERRED IN HOLDING THAT LAW ENFORCEMENT AGENTS CAN USE DISCRETION TO SELECT WHICH CARS ARE STOPPED AND SEARCHED DURING A COMMAND AUTHORIZED GATE SEARCH.

At trial, defense counsel moved to suppress admission into evidence of the laboratory results of a compulsory urinalysis test performed on a sample of appellant's urine at the direction of his commanding officer. The results of the urinalysis were positive for marijuana. The parties stipu-

lated that, on or about February 8, 1984, Sergeant Rockwell of Base Security, Naval Air Station, North Island, San Diego, California, conducted a command-authorized gate search of vehicles entering the base.

During the course of the day, Sergeant Rockwell directed the driver of a 1979 gray Ford Mustang to pull over to be inspected. Although there were three occupants in the car, appellant was not one of them, and he was not present during the subsequent search of the vehicle. A drug detection dog was taken through the car and alerted on the dashboard. At that time, a more thorough inspection revealed a marijuana roach in the ashtray. Later, laboratory tests of the roach revealed the presence of tetrahydrocannabinol (THC). While the search was in progress, base security personnel discovered that appellant was the registered owner of the car.

It was further stipulated that: (1) the gate inspection was conducted in accordance with a memorandum dated January 1, 1984, which was addressed to all law enforcement personnel and directed that vehicles "be stopped on a random basis"; and (2) "That determination of randomness ... [would be] left to the supervisor or the lead police officer," who also was "tasked with directing the vehicles" to "the inspection area." On the evening in question, the lead policeman, Sergeant Rockwell, determined that three vehicles would be stopped and inspected, permitting the next three to pass. Thereafter, every-other group of three vehicles was stopped and searched, unless traffic conditions and the lengths of searches dictated otherwise.

As a result of the February 8 search, the discovery of marijuana in appellant's car, and the knowledge that appellant previously had tested positive for marijuana usage, appellant's commanding officer authorized a test of appellant's urine to determine whether THC (the active ingredient identifying marijuana usage) would be found. Appellant provided a urine sample for analysis, the results of which were positive for THC.

Appellant moved to suppress the results of the test, alleging that the order requiring him to submit to the test resulted from the unlawful search of his vehicle; therefore, his commanding officer did not have probable cause to order the search of his body fluids for evidence of an offense. The military judge denied the motion, holding that appellant had no "standing" to object because he had loaned the vehicle to others and had not been in possession and control of it at the time of the search.

The Court of Military Review rejected the military judge's ruling and found that appellant's "continuing proprietory [sic] interest" in the vehicle "was sufficient to grant him standing." 20 M.J. at 595. We need not decide whether appellant enjoyed standing to object because, like the Court of Military Review, we find the inspection was lawful so it could give rise to probable cause to order further inspection of the appellant's body fluids.

Mil.R.Evid. 313(b) [1] establishes standards for domestic gate inspections reflective of the balance between the responsibility of the commander to secure the safety and welfare of his installation and the rights of persons to be free from unreasonable searches and seizures of their persons and property. It is clear from this record that at least one of the lawful purposes of the gate inspection was to maintain readiness and effectiveness of the command. Drug traffic on and off a military installation poses a major obstacle to this objective. By "ordering gate searches or inspections, the commander's primary objective is not to apprehend a particular drug offender but rather to deter and cripple the traffic altogether." *United States v. Alleyne*, 13 M.J. 331, 335 (C.M.A.1982).

To resolve this case we need to look at two principal factors:

1. Was the gate search or inspection in furtherance of command policies and directives?

---

1. Manual for Courts-Martial, United States, 1969 (Revised edition).

2. Was the objective of the search to focus-in on this particular vehicle and appellant, or was it to safeguard the security of the installation?

By stipulation, the parties agreed that the search was being conducted pursuant to a command directive. However, appellant contends that the directive was violated because the lead police officer did not "randomly select" vehicles to be stopped. We are satisfied, however, that the inspection was being carried out pursuant to appropriate command policies and directives.

■ As to the second factor, appellant contends that, because the lead police officer was permitted to exercise discretion in the manner and selection of the vehicles to be searched, the search of his vehicle was unlawful. Appellant relies on *United States v. Harris*, 5 M.J. 44 (C.M.A.1978), for the proposition that "if the law officers may exercise *any discretion*," the search is "unreasonable" *per se*. To the extent that *Harris* may be so restrictively read, we reject it. Mil.R.Evid. 313(b) provides a reasonable standard and gives appropriate guidance to commanders for conducting lawful searches and inspections.[2] Our reading of this record leads us to the conclusion that this search was conducted for the general purpose of ensuring the security of the installation, and it was not planned or carried out with the intention of singling out appellant or his vehicle. The inspection was "intended to determine and assure the readiness of the unit inspected, rather than merely to provide a subterfuge

for avoiding limitations that apply to a search and seizure in a criminal investigation." *United States v. Middleton*, 10 M.J. 123, 132 (C.M.A.1981).

■ The remaining question is whether appellant's commanding officer had "probable cause" to order a search of appellant's "body fluids." Mil.R.Evid. 315 and 312(d). Based upon the fact that a marijuana "roach" was found in appellant's vehicle and that appellant previously had tested positive for marijuana use, we conclude that the "totality-of-the-circumstances" would lead a reasonable man to conclude that appellant was continuing to use marijuana, a violation of the Uniform Code of Military Justice, and that a seizure of his body fluids would reveal evidence of such use. *United States v. Johnson*, 23 M.J. 209, 212 (C.M.A.1987).

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

SULLIVAN, Judge (concurring in the result):

I vote to affirm for a different reason. Under the facts of this case, appellant had no reasonable expectation of privacy in the car at the time of the search. Therefore, he has no standing to object to its search. *United States v. Miller*, 13 M.J. 75, 77–78 (C.M.A.1982); *United States v. Sanford*, 12 M.J. 170, 174 (C.M.A.1981).

2. I see no need, on this record, to reflect again on the position I took in *United States v. Moore*,

23 M.J. 295, 299–300 (C.M.A.1987).