UNITED STATES, Appellee,

v.

Harold J. FLOWERS, Electronics Technician Third Class, U.S. Navy, Appellant.

No. 56,975.

NMCM 85 2165.

U.S. Court of Military Appeals.

Sept. 27, 1988.

For Appellant: *Lieutenant Deborah D. Sorkin,* JAGC, USNR (argued); *Lieutenant Commander Robert J. Smith,* JAGC, USN (on brief); *Lieutenant J. Cunyon Gordon,* JAGC, USN.

For Appellee: *Lieutenant Commander Lawrence W. Muschamp,* JAGC, USN (argued); *Captain Wendell A. Kjos,* JAGC, USN (on brief); *Lieutenant T.J. Romine,* JAGC, USNR.

*Opinion of the Court*

COX, Judge:

Contrary to his pleas, appellant was convicted by general court-martial of stealing military property. He was sentenced by the military judge to a bad-conduct discharge, confinement for 9 months, total forfeitures, and reduction to pay grade E–1.

The Court of Military Review summed up the case on appeal as follows:

The issue presented by this appeal is whether certain evidence was the fruit of a lawful inspection or an illegal search . . . .

At trial, defense counsel moved to suppress evidence seized during a brow [1] inspection and other evidence derived from the inspection. The accused was stopped when he was leaving the ship by a duty master-at-arms, Torpedoman's Mate Third Class Spate, who inspected the boxes the accused and two friends were carrying. Citing *United States v. Harris,* 5 M.J. 44 (C.M.A.1978), defense counsel argued that the evidence was inadmissible, because, although Spate inspected everyone who was leaving the ship, he and other members of the ship's master-at-arms force believed they had

1. For uninitiated landlubbers, a "brow" is a nautical term of Scandinavian origin meaning "a gangplank, usually fitted with rollers at the end resting on the wharf to allow for the movement of a ship with the tide." *Webster's Third New International Dictionary (Unabridged)* 284 (1981).

discretion as to whether to inspect the belongings of a particular individual depending on the traffic flow.

23 M.J. 647 (*en banc*) (1986) (citation omitted). The military judge overruled the objection and admitted the evidence.

On appeal to the Court of Military Review, "a divided panel of" the court reversed the military judge's ruling, holding the evidence was inadmissible "because the record did not establish a delegation of command authority to working personnel." *Id.* at 648 (footnote omitted). The dissenting judge believed that "the military judge was correct in ruling the search proper under Military Rule of Evidence 313(b)," Manual for Courts-Martial, United States, 1984, and, therefore, it was lawful. Unpub. op. at 5 (July 31, 1986) (Kercheval, S.J., dissenting).

Later, upon its own motion, the Court of Military Review reconsidered the July 31 decision *en banc*. The judges of the reconsideration court (which did not include any of the panel judges [2]) were unanimous in their agreement "that the challenged evidence was the fruit of a reasonable and lawful inspection, ... [they] set aside the" July 31 ruling and affirmed the findings "and sentence as approved on review below ...." 23 M.J. at 650. They found the following:

> The inspection of the accused's property ... was ... sanctioned by Mil.R.Evid. 313(b) and the commanding officer's instruction on brow inspections. It was an examination at an exit point to locate contraband. Clearly it was not a subterfuge for a search for criminal evidence. It was not directed immediately following the report of a specific offense; it did not select specific individuals for examination; and it did not subject military personnel examined to substantially different intrusions during the same examination.[3] The inspection was also conducted in accordance with established custom. It was part of the ship's routine

under the aegis of the JOOD [junior officer of the deck], the command representative, who was present.[4] Thus, it was, in effect a scheduled command inspection. No unlawful discretion was exercised by the inspector.

[3] Such factors, not present here, will not necessarily invalidate an inspection. Mil.R. Evid. 313(b).#

[4] The command duty officer does not stand a watch on the enlisted brow.#

23 M.J. at 649–50.

When appellant's appeal reached us, we agreed to consider the following issues:

## I

WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW MAY ORDER, *SUA SPONTE*, *EN BANC* RECONSIDERATION OF A DECISION OF A PANEL OF THE COURT WHICH FAITHFULLY APPLIES THIS HONORABLE COURT'S PRECEDENTS.

## II

WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW ERRED WHEN IT UPHELD THE VALIDITY OF A BROW INSPECTION WHEN THE GOVERNMENT DID NOT ADEQUATELY DEMONSTRATE COMPLIANCE WITH THE COMMANDING OFFICER'S ORDER AND WHERE DISCRETION RESTED AT THE SEARCHER LEVEL.

■ The first issue requires us to examine the history of Article 66(a), Uniform Code of Military Justice, 10 U.S.C. § 866(a), wherein lies the authority for an *en banc* Court of Military Review to reconsider "[a]ny decision of a panel ..." of the court. In *United States v. Chilcote*, 20 U.S.C.M.A. 283, 43 C.M.R. 123 (1971), after an extensive examination of Article 66, this Court held that a case could not be recon-

---

**2.** As to the three original panel members, we note that, when this case was reconsidered *en banc*, Judge Rapp, the author of the original opinion, had been transferred to a new duty assignment; Judge Grant, who had concurred in the result with a separate opinion, was absent; and Judge Kercheval, who had issued a dissenting opinion, had died in office.

sidered *en banc* after a panel had reached a decision in the matter. *Accord United States v. Wheeler*, 20 U.S.C.M.A. 595, 44 C.M.R. 25 (1971). Thereafter, Article 66 was amended to provide that "[a]ny decision of a panel may be reconsidered by the court sitting as a whole in accordance with such rules"; Pub.L.No. 98–209, § 7(b), 97 Stat. 1402. The reference to rules is to Article 66(f), which authorizes the Judge Advocates General to prescribe Uniform Rules of Procedure for Courts of Military Review. The legislative history of that amendment reflects its purpose was to "overrid[e]" the decisions of this Court in *United States v. Chilcote* and *United States v. Wheeler*, both *supra*. S.Rep. No. 53, 98th Cong., 1st Sess. 28 (1983).

Acting pursuant to the authority of Article 66(f), the Judge Advocates General promulgated Rules of Practice and Procedure for the Courts of Military Review. Rule 17 thereof states:

### EN BANC PROCEEDINGS

(a) A majority of the judges present for duty may order that any appeal or other proceeding be considered or reconsidered ... by the Court sitting as a whole. Such consideration or reconsideration ordinarily will not be ordered except (1) when consideration by the full Court is necessary to secure or maintain uniformity of decision, or (2) when the proceedings involve a question of exceptional importance, or (3) when a sentence being reviewed pursuant to Article 66 extends to death.

22 M.J. at CXXXIII.

There is nothing in the record before us that shows Rule 17 has been violated. Although it is somewhat unusual that none of the judges who sat on the original panel participated in the *en banc* reconsideration, we do not find that fact to be of decisional concern. What does cause consternation, however, is ensuring proper compliance with Rule 17. While there is no finding in the opinion below to indicate that the *en banc* hearing was convened for a particular purpose under the rule, absent a showing to the contrary, we are confident that the court is cognizant of its own rules and complies therewith. Accordingly, we grant appellant no relief based upon the decision of the Court of Military Review to reconsider the case.

■ The second granted issue is likewise resolved against appellant. First of all, we have recently "reject[ed]" the notion "that 'if the law officers may exercise *any discretion*,' the search is 'unreasonable' *per se*." *United States v. Jones*, 24 M.J. 294, 296 (C.M.A.1987). *See also United States v. Johnston*, 24 M.J. 271, 275 (C.M.A.1987). We further held that Mil.R.Evid. 313(b) provides a reasonable standard for inspections. We looked, as did the Court of Military Review in this case, at the conduct involved to determine if "the gate search or inspection" was "in furtherance of command policies and directives," and if "the objective of the search [was] to focus-in on this particular ... appellant, or ... to safeguard the security of the installation." "The inspection was" not designed "merely to provide a subterfuge for avoiding limitations that apply to a search and seizure in a criminal investigation." 24 M.J. 296, *citing United States v. Middleton*, 10 M.J. 123, 132 (C.M.A.1981). *See also United States v. Johnston*, *supra* at 274. Furthermore, we are clear that this inspection did not run afoul of the standards enunciated in *New York v. Burger*, —— U.S. ——, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987). *Cf. United States v. Battles*, 25 M.J. 58, 60 (C.M.A. 1987). *See also* Chief Judge Everett's concurring-in-the-result opinion herein discussing *New York v. Burger*, *supra*. 26 M.J. 463, 466.

Applying these criteria to the brow inspection on board the USS CARL VINSON (CVN–70), we are satisfied that appellant's right to be free from unconstitutional searches and seizures was not violated and that the contraband found incident to the brow inspection was admissible in evidence against him.

The *en banc* decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Judge SULLIVAN concurs.

EVERETT, Chief Judge (concurring in the result):

### I

At one time the Court of Military Review had no authority to reconsider *en banc* a decision rendered by a panel of the court. *See United States v. Chilcote*, 20 U.S.C.M.A. 283, 43 C.M.R. 123 (1971); *United States v. Wheeler*, 20 U.S.C.M.A. 595, 44 C.M.R. 25 (1971). Consequently, no means existed—short of an appeal to this Court—for resolution of conflicts between separate panels of the same Court of Military Review.

In 1983, Congress remedied this situation by adding to Article 66(a) the sentence: "Any decision of a panel may be reconsidered by the court sitting as a whole in accordance with such rules." In view of the purposes of this amendment—to resolve differences as to legal issues—I do not believe that it confers upon the Court of Military Review the power to reconsider *en banc* a factual finding or a determination of sentence appropriateness made by a panel. Instead, only the panel's conclusions of law may be reconsidered. Indeed, only as to legal issues—rather than factual findings—is it "necessary to secure or maintain uniformity of decision" or will there be "a question of exceptional importance." *Cf.* Rule 17(a), Rules of Practice and Procedure for the Courts of Military Review, 22 M.J. at CXXXIII.

With this in mind, I have examined the panel decision and the subsequent decision *en banc* to determine whether the reconsideration was limited to questions of law and did not involve a factual determination. Having satisfied myself on this point, I conclude that the reconsideration was permissible. I do not believe that the Court of Military Review is required specifically to state the grounds for its reconsideration *en banc;* and, in this connection, I note that Rule 17(a) itself prescribes that "consideration or reconsideration" *en banc* "*ordinarily* will not be ordered except" on the grounds specified in the rule. (Emphasis added.)

### II

In *New York v. Burger*, —— U.S. ——, 107 S.Ct. 2636, 96 L.Ed.2d 601, 612 (1987), the Supreme Court reaffirmed that an owner or operator of a business has an expectation of privacy in commercial property "not only with respect to traditional police searches conducted for the gathering of criminal evidence but also with respect to administrative inspections designed to enforce regulatory statutes." However, the "expectation of privacy in commercial premises ... is different from, and indeed less than, a similar expectation in an individual's home." 107 S.Ct. at 2642. The Supreme Court then concluded:

> [A]s in other situations of "special need," see *New Jersey v. T.L.O.* 469 U.S. 325, 353, 105 S.Ct. 733, 750, 83 L.Ed.2d 720 (1985) (opinion concurring in the judgment), where the privacy interests of the owner are weakened and the government interests in regulating particular businesses are concomitantly heightened, a warrantless inspection of commercial premises may well be reasonable within the meaning of the Fourth Amendment.

107 S.Ct. at 2643. The Court observed that a "warrantless inspection, however, even in the context of a pervasively regulated business, will be deemed to be reasonable only so long as three criteria are met." Those criteria are: (1) "[T]here must be a 'substantial' government interest that informs [sic] the regulatory scheme pursuant to which the inspection is made"; (2) "the warrantless inspections must be 'necessary to further [the] regulatory scheme'"; and (3) "'the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant.'"

In connection with the third requirement, the Court observed that

> the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly

defined scope, and it must limit the discretion of the inspecting officers.

*Id.* 107 S.Ct. at 2643–44.

In my view, an administrative inspection in the military society is subject to parallel requirements. Since Mil.R.Evid. 313(b) provides the authority for admitting evidence obtained in such inspections, this rule must be examined in light of *Burger*. As I read the rule, it passes constitutional muster. "[A] 'substantial' government interest" exists in assuring that the members of military organizations are fit to perform their duties, that they possess the necessary equipment, and that they are not harboring contraband. Secondly, in light of military experience spanning many decades—to which this Court adverted in *United States v. Middleton*, 10 M.J. 123 (C.M.A.1981)—I am convinced that the warrantless inspection is necessary to assure performance of the regulatory scheme. Finally, Mil.R.Evid. 313(b) restricts the scope of administrative inspections to reasonable bounds and limits the discretion of the inspecting personnel.

As I understand the evidence in this case, the brow inspection initially was conducted illegally. Mil.R.Evid. 313(b) was violated, because the inspection was being performed by personnel who had not been provided by the commander with the requisite guidelines as to whose belongings should be searched. Subsequently, however, other personnel performed the brow inspection; and they were searching everyone who left or entered the vessel. In short, they were exercising no discretion whatsoever; so the danger to which *Burger's* third requirement is directed did not exist.

The earlier improperly performed inspection—which failed to disclose appellant's contraband—did not affect in any way the later, properly performed inspection—which disclosed the contraband. Therefore, in my view, the Court of Military Review properly concluded that the panel had erred.*

---

* My interpretation of *New York v. Burger*, —— U.S. ——, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987), is not at odds with this Court's decision in *United States v. Johnston*, 24 M.J. 271 (C.M.A.1987), because there we recognized the importance of limiting discretion of inspecting personnel but concluded that under the circumstances this requirement had been satisfied.