**UNITED STATES**

v.

**Senior Airman Carol A. MOORE, FR179–46–7621 United States Air Force.**

**ACM 32066.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 3 Nov. 1995.

Decided 6 Feb. 1997.

Appellate Counsel for Appellant: Captain Michael L. McIntyre (argued), Colonel Jay L. Cohen, Colonel David W. Madsen, and Lieutenant Colonel Kim L. Sheffield.

Appellate Counsel for the United States: Captain Deborah M. Carr (argued), Colonel Jeffery T. Infelise, and Lieutenant Colonel Michael J. Breslin.

Before DIXON, SCHREIER, and STARR, Appellate Military Judges.

## OPINION OF THE COURT

SCHREIER, Senior Judge:

Pursuant to her conditional guilty plea, appellant was found guilty of divers use of methamphetamine. The military judge sentenced her to a bad-conduct discharge, 3 months hard labor without confinement, forfeiture of $500 pay per month for 3 months, and reduction to E–1. Appellant's two assignments of error concern the validity of her urinalysis inspection. Specifically, we are asked to determine whether appellant was ordered to participate in a unit sweep by an appropriate commander. Finding no error, we affirm.

## BACKGROUND

Appellant was an aeromedical technician assigned to the medical part of the 390th Fighter Squadron. Her duties included administering immunizations to squadron members prior to deployment, assisting squadron members in obtaining medical appointments, and acting as a medical technician in the flight surgeon's office at the base hospital. Appellant was attached to the 366th Medical Group and her day-to-day duties were performed at the base hospital as part of its aeromedical squadron. All administrative functions such as leave, aerobic testing, awards, security documentation, and evaluations were performed by the flying squadron. However, nobody in the flying squadron supervised her daily activities. Medical personnel supervised her daily performance, training, and professional activities. She was on both organizations' recall rosters and was subject to deploy with either organization.

The Medical Group Commander ordered a unit sweep of all medical personnel to ensure the safety of his patients and to determine the fitness of his organization. Appellant provided a urine sample which tested positive for methamphetamine. During her subsequent court-martial, appellant argued that the Medical Group Commander was not a proper commander to order her to participate in a unit sweep. She further claimed that the urinalysis was an invalid inspection. The military judge denied both motions.

## WHO IS A COMMANDER FOR INSPECTION PURPOSES?

The appellant asserts that the military judge erred by failing to suppress the results of the urinalysis test. Appellant concedes that the Medical Group Commander, as her supervisor, could order her to submit a urine sample. However, she claims those results are not admissible at a court-martial. Appellant argues that the term "incident of command" under Mil. R. Evid. 313(b) refers only to the assigned commander and not to a supervisor or attached commander.

Appellant was part of a unique organizational structure not in existence, or perhaps not even anticipated, when the Military Rules of Evidence were drafted. We must review not only the rules and their purposes, but also the case law governing the Fourth Amendment and the authority of a commander to determine how the Rules of Evidence apply in this case.

While the terms "commander" or "incident of command" are frequently used, our understanding of what makes a commander is not as clearly defined. For many years the commander was the officer assigned as "commander" in the direct chain of command over a military member. This organizational structure wasn't questioned because that's the way it had always been. Then several things changed. The Air Force underwent a massive restructuring which blurred the traditional organizational lines. For example, some maintenance personnel were assigned directly to operational organizations. There was a move toward joint service organizations. Finally, there was the activation of Air Force Reserve units and their blending with active duty units during Desert Shield/Desert Storm. Each of these actions impacted the way we viewed a commander.

The Courts have long recognized a military commander's authority to search or inspect persons and places within his control. *United States v. Florence*, 5 C.M.R. 48, 50, 1952 WL 2062 (1952); *United States v. Stuckey*, 10 M.J. 347 (C.M.A.1981). "By virtue of his command status, a commander has responsibilities that others do not possess, and so he must be granted powers commensurate with that responsibility." *United States v. Kal-*

*scheuer,* 11 M.J. 373, 376 (C.M.A.1981). These unique responsibilities include overseeing the health, safety, welfare, morale, and efficiency of those under his command. *United States v. Harris,* 5 M.J. 44, 59 (C.M.A.1978).

 This ability of a military commander to search or inspect persons or property within his control is consistent with the Fourth Amendment which protects an individual from unreasonable searches and seizures. The Fourth Amendment applies to the military. *United States v. Ezell,* 6 M.J. 307 (C.M.A.1979). However, application of the Fourth Amendment may "take into account the exigencies of military necessity and unique conditions that may exist within the military society." *United States v. Middleton,* 10 M.J. 123, 127 (C.M.A.1981). The Fourth Amendment protects only against unreasonable searches and seizures. What is unreasonable depends upon the circumstances of the intrusion. *United States v. Thatcher,* 28 M.J. 20, 22 (C.M.A.1989). The Fourth Amendment protections against unreasonable searches and seizures must be linked to the individual's reasonable expectations of privacy. *United States v. Middleton,* 10 M.J. at 127. The decision as to whether a search is unreasonable is based on the underlying facts. The Courts balance the public interest against an individual's right to be free of governmental invasions of privacy. *United States v. Jones,* 20 M.J. 594, 596 (N.M.C.M.R.1985), citing *United States v. Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). Thus, evidence obtained from a reasonable search or seizure does not violate the Fourth Amendment.

These Fourth Amendment principles form the basis for the rules of evidence governing inspections, searches, and seizures. Evidence obtained from a validly conducted inspection is admissible at trial. Mil. R. Evid. 313(a).

> An "inspection" is an examination of the whole or part of a unit, organization, installation, vessel, aircraft, or vehicle, ... conducted as an incident of command the primary purpose of which is to determine and to ensure the security, military fitness, or good order and discipline of the unit, organization, installation, vessel, aircraft, or vehicle.

Mil. R. Evid. 313(b). Mil. R. Evid. 313(b) passes Fourth Amendment muster because it restricts the scope of administrative inspections to reasonable bounds. *United States v. Thatcher,* 28 M.J. 20, 23 (C.M.A.1989).

However, the drafters of the rules used the more ambiguous term "incident of command" as opposed to the word "commander" perhaps anticipating military exigencies. Their analysis supports a flexible interpretation of the term "incident of command." "Unless authority to do so has been withheld by competent superior authority, any individual placed in a command or *appropriate supervisory position* may inspect the personnel and property within his or her control." (emphasis added) Analysis of the Military Rules of Evidence, Rule 313, page A22–22, Appendix 22, Manual for Courts–Martial. While the drafters' comments are not binding, we will consider them in concert with the other principles discussed.

 Appellant was assigned to the 390th Fighter Squadron. That organization acted in taking care of various administrative functions. Additionally, appellant's duties supported the mission of that squadron. However, many of the same responsibilities of command were shared by the 366th Medical Group. They were responsible for training, they drafted her performance report, and supervised her daily work. Appellant was subject to deploy with the medical squadron, could be reassigned by the medical squadron, and her duties involved the care of more than just members of her squadron. Her duties also supported the mission of the medical group in a direct and palpable manner not in a minor or remote manner. Her presence in the hospital environment contributed to the quality of medical care rendered by the medical group.

When the medical group commander decided to conduct a unit sweep to ensure the safety of his patients and to determine the fitness of his organization, by her physical presence as part of the day-to-day operations, she was part of the organization. In a unit sweep, a commander is both overseeing

the accomplishment of the mission as well as watching out for the health and safety of the members of the organization. We can envision no activity which would be more "incident to command" than a unit sweep. Thus, whether we consider Colonel G as occupying an "appropriate supervisory position" (as envisioned by the drafters of the rules of evidence) or as some type of concurrent or hybrid commander over appellant, it was within his authority to include her in the unit sweep.

The idea of concurrent commanders is not unique. In *Evans* several reserve units were activated and assigned to the 46th Aerial Port Squadron. Although the reserve parent units retained administrative control, the reservists blended into the active duty unit. We found that the commander exercised functional command over the activated reservists and could direct a urinalysis inspection. *United States v. Evans*, 37 M.J. 867 (A.F.C.M.R.1993).

We reject appellant's proposal that the hospital group commander should have had the flying squadron commander order her to provide a urinalysis sample. That proposal creates an anomaly whereby appellant would appear to be singled out by the flying squadron commander for a urinalysis, thereby raising the question of whether the results of that command-directed urinalysis would be admissible in court-martial.

Our bottom line in analyzing this issue is the reasonableness of appellant's participation in the unit sweep. The sweep was conducted for a valid purpose to determine the fitness of the organization, appellant was present in the organization, her fitness to perform duties was integral to the fitness of the organization. Furthermore, we must consider the facts that appellant apparently considered her participation in the unit sweep reasonable as she did not protest it at the time and she indicated the medical group as her organization when she signed in for the urinalysis. Moreover, we believe that both constitutional principles and the Military Rules of Evidence must be flexible enough to account for unique military situations. We must avoid a mechanical application of the rules arising in a civilian context

to cases arising in the unique military environment. *United States v. Lopez*, 35 M.J. 35, 42–43 (C.M.A.1992) (Judge Cox concurring).

Before closing, we want to briefly review one other issue which was indirectly raised in this assignment of error. The commander's stipulated testimony indicates that he wanted to sweep the Medical Group to ensure patient safety and the fitness of the members. Those carrying out the sweep used the recall roster which included both those assigned and attached members. Since appellant was involved in patient care, we find that she was within the scope of the unit sweep. The Medical Group Commander was focused on patient safety. *See United States v. Evans*, 37 M.J. at 869–70 (urinalysis inspection properly expanded by implementing official).

[8] We apply an abuse of discretion standard in reviewing a motion to suppress. *United States v. Ray*, 26 M.J. 468, 472 (C.M.A.1988); *United States v. Evans*, 37 M.J. at 868. We conclude that the military judge did not abuse his discretion in finding that the Medical Group Commander was a proper person to order appellant's urinalysis.

## WAS THIS URINALYSIS AN INVALID INSPECTION?

Next, appellant argues that this urinalysis sweep was a subterfuge to obtain evidence for disciplinary purposes following a recent report of drug abuse in the organization. We reject appellant's argument. We find that the prior reports of drug abuse had been resolved and no one was singled out for the inspection. The military judge found that the primary purposes of the urinalysis were to ensure the safety of his patients and to determine the fitness of the organization. We concur with those findings. The military judge did not abuse err in admitting the results of the urinalysis inspection.

We have examined the record of trial, and conclude that the findings and sentence are correct in law and fact, the sentence is appropriate, and no error prejudicial to the substantial rights of appellant was committed.

Accordingly, the findings of guilty and the sentence are

AFFIRMED.

Chief Judge DIXON and Judge STARR concur.