UNITED STATES

v.

**Allen B. HEATH, Boatswain's Mate
Second Class, U.S. Coast Guard.**

**CGCMS 24077.
Docket No. 1024.**

U.S. Coast Guard Court of Military Review.

2 June 1994.

Trial Counsel: LT Karen E. Lloyd, USCGR.

Detailed Defense Counsel: LT Jefferey C. Good, USCG.

Appellate Defense Counsel: LCDR Allen Lotz, USCG.

Appellate Government Counsel: LT John F. Koeppen, USCG.

Before Panel Five BAUM, EDWARDS, and FEARNOW, Appellate Military Judges.

BAUM, Chief Judge:

Appellant was tried by special court-martial, judge alone, and pursuant to his pleas of guilty was convicted of the following offenses: one specification of dereliction of duty in violation of Article 92, UCMJ, 10 U.S.C.A. § 892; four specifications of maltreatment of subordinates in violation of Article 93, UCMJ; two specifications of provoking speech in violation of Article 117, UCMJ; one specification of adultery, one specifica-

tion of drunk and disorderly, four specifications of communicating indecent language, and one specification of solicitation of another to violate a general regulation, all in violation of Article 134, UCMJ.

The judge sentenced Appellant to a bad conduct discharge, confinement for six months, and reduction to pay grade E-1. The convening authority approved only a bad conduct discharge and reduction to pay grade E-2, as called for by the sentence terms of a negotiated plea agreement. Before this Court, Appellant has assigned six errors.

## I

THAT APPELLANT'S PLEA OF GUILTY TO SPECIFICATION NINE OF CHARGE V, ALLEGING SOLICITATION TO COMMIT A VIOLATION OF A GENERAL REGULATION, WAS IMPROVIDENT

■ Appellant contends that there was no lawful general regulation to violate since the regulation alleged in specification nine was the same one found to be defective in *U.S. v. Webster*, 37 M.J. 670 (C.G.C.M.R.1993) and *U.S. v. Remchak*, Dkt. No. 1009 (C.G.C.M.R. 11 June 1993). Accordingly, he asserts that the plea of guilty to solicitation to violate that regulation was improvident. Subsequent to Appellant's filing of assigned errors, this Court decided *U.S. v. Ballard*, 39 M.J. 1028 (C.G.C.M.R.1994) and *U.S. v. Townsend*, 39 M.J. 784 (C.G.C.M.R.1994). Those cases make it clear that *U.S. v. Webster*, supra, has limited applicability and *U.S. v. Remchak*, supra, has been expressly renounced as wrongly decided.

*U.S. v. Ballard*, supra, was a guilty plea case, just as we have here. In *Ballard*, we found that the accused's pleas of guilty were provident, that he had full opportunity to challenge the regulation at trial and chose not to do so, thereby acknowledging its lawfulness. We pointed out that, in so doing, the accused relieved the Government of the burden of proving the Commandant's personal involvement in the promulgation of the directive by a subordinate officer. As a result, we determined not to reopen the trial to require the Government to prove something that was admitted by the accused's guilty plea.

The same result pertains in the case before us now. The pleas of guilty were provident and Appellant acknowledged the lawfulness of the regulation by those pleas. As in *Ballard*, we will not require the Government to prove something now that was admitted by Appellant's guilty pleas at trial. Accordingly, assignment of error I is rejected. In taking this action, we deny the Government's motion that this Court judicially note Chapter 8 of Coast Guard Regulations and two promulgation orders, since those documents have no relevance to our resolution of this assigned error.

## II

THAT APPELLANT WAS UNFAIRLY PREJUDICED BY REMARKS OF THE TRIAL COUNSEL DURING SENTENCING ARGUMENT COMMENTING ON APPELLANT'S EXERCISE OF HIS RIGHT TO REMAIN SILENT

■ At the sentencing stage of trial, Appellant chose to remain silent by not testifying and by not making an unsworn statement. Although Appellant did not object to the trial counsel's argument on sentence when it was made, he now claims that the trial counsel improperly referred to that silence and invited the military judge to sentence more severely because of Appellant's exercise of this constitutional right. The portion of trial counsel's argument that Appellant now finds objectionable was as follows: "[E]ven today we don't have someone who is ready to repent, and who wants to change and build—build from the ground up." R. at 203.

In response, the Government, citing *U.S. v. Edwards*, 35 M.J. 351 (C.M.A.1992), says the question is whether the trial counsel's argument can be construed as asking the court to draw a negative inference from Appellant's exercise of a constitutional right. In that regard, the Government contends that trial counsel's argument, when read in context, does not focus at all upon Appellant's exer-

cise of his right to remain silent. Instead, according to the Government, the argument was about Appellant's mendacity during the providence inquiry and his lack of rehabilitation potential based on a reasonable inference from the evidence.

The evidence referred to by the Government was in the form of testimony from numerous witnesses in aggravation who recounted the details of each offense, including the frequency of Appellant's use of certain indecent language. In contrast, during the inquiry into the providence of the pleas of guilty, Appellant tried to minimize the use of that language, even denying using one particular phrase more than once. Witnesses, on the other hand, said the phrase was one of Appellant's favorites, which he used frequently.

The pertinent part of the trial counsel's argument started by addressing the possibility that Appellant might be trying to derive some benefit from pleading guilty to the specification alleging the language in question. The argument then went on to say in its entirety the following:

> But in reality he tried to dis—he tried to downplay it, even on providency. He denied saying it more than once. He claims he only said it once, but you heard other wi[t]nesses—you heard what they said about the frequency with which he used that term. One witness even said "Oh, that was his favorite phrase." So even today we don't have someone who is ready to repent, and who wants to change and build—build from the ground up. This man is a Doctor Jekyll and a Mr. Hyde, if you will. He acts one way around his supervisor, puts a good show on in front of the various Chiefs that have supervised him. But when he is alone with his subordinates, there're [sic] scared of him.

R. 203

We agree with the Government's assessment of this argument. It does not relate at all to Appellant's exercise of his right to remain silent. Instead, the argument constituted fair comment on aggravation evidence that had been presented by the prosecution and on Appellant's sworn answers during the judge's colloquy with him concerning his guilty pleas. In this regard, the record reflects that the judge informed Appellant before the plea inquiry commenced that his answers could be used by the prosecution during sentencing as evidence in aggravation. We find no merit to assignment of error II.

### III

## THAT APPELLANT WAS UNFAIRLY PREJUDICED BY THE INTRODUCTION OF IMPROPER EVIDENCE IN SENTENCING

Appellant asserts that, during sentencing, the military judge improperly considered a court memorandum reflecting nonjudicial punishment imposed on Appellant in January 1990. This prosecution exhibit from Appellant's service record was admitted as aggravation evidence over objection for its failure to clearly indicate that Appellant's rights were properly honored in accordance with *U.S. v. Booker*, 5 M.J. 238 (C.M.A.1977).

*U.S. v. Booker*, supra, was a case dealing with the use at trial of prior summary courts-martial convictions to sustain an increase in the authorized punishment under certain Manual for Courts–Martial provisions. There was no indication in that case that nonjudicial punishment was involved in any way. Nevertheless, in an opinion authored by then Chief Judge Fletcher and dissented to by Judge Cook, the Court fashioned a new procedural requirement for both summary courts-martial and nonjudicial punishment, as a prerequisite to their admissibility at a subsequent trial.

Based on Chief Judge Fletcher's interpretation of the Supreme Court's decision in *Middendorf v. Henry*, 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976), the Court created a right for an accused to consult with an independent counsel before deciding whether or not to refuse trial by summary court-martial or to demand court-martial in lieu of nonjudicial punishment. The Court also required that any waiver of these rights be in writing.[1]

---

1. Contemporaneous criticism of the *Booker* opinion may be found in *U.S. v. Nordstrom,* 5 M.J.

Notwithstanding misgivings about *Booker* expressed at the time and that may still remain, the procedures imposed by the opinion have been implemented by Coast Guard regulation. The Coast Guard's Military Justice Manual (COMDINST M5810.1C) Article 1–C–5d incorporates the Booker mandates into the procedures for nonjudicial punishment and the PMIS/JUMPS MANUAL sets out the manner of documenting this procedure on a court memorandum form.

Among other things, that latter regulation says that Block 41 of the court memorandum, which indicates that the individual was advised of the right to confer with counsel and has voluntarily consented to the proceeding, shall have an "X" typed in the "Yes" block "only when the 'Responsible Officer' ... has actually seen the member's signature on an 'Acknowledgment of Rights—Acceptance of NJP' form." ROT Appellate Exhibit XII PMIS/JUMPS MANUAL, VOLUME II (PERSRU), Art. 2.G.4.ff.

Appellant objects to the court-memorandum admitted in evidence because *U.S. v. Booker,* supra, says a valid waiver could not be assumed or inferred "solely on the basis of a single check in a box on a prepared form." *Id.* at 244. Moreover, Appellant complained at trial that the check mark was not even in the box. We reject both of these objections. First, it was clear to the trial judge from viewing the form, as it is to us, that the "X" was intended for the block marked "YES" and that poor alignment when the entry was made placed the "X" outside the box.

Furthermore, in light of the provision in the PMIS/JUMPS MANUAL requiring that a responsible officer view the accused's signed acknowledgment of rights and acceptance of nonjudicial punishment before an entry is made, we may safely presume that such was done. The issue was litigated at trial and the military judge fully inquired into the matter, augmenting the record with the regulations she had judicially noted as appellate exhibits. We find that the judge's ruling admitting the prosecution exhibit based on those regulations was correct.

Moreover, we believe the ruling comports with *U.S. v. White,* 19 M.J. 662, 668 (CGCMR 1984), where it was stated, "that forms of evidence other than a completed and signed acknowledgment of rights/acceptance of NJP form are acceptable ..." We find the evidence considered by the military judge acceptable and sufficient to establish that Appellant was advised of his right to consult with counsel before accepting nonjudicial punishment, as required by Coast Guard regulations. Assignment of error III is rejected.

### IV, V, and VI

The remaining assignments of error raise issues with respect to the appointment of judges, the use of collateral duty judges, and the lack of fixed terms of office for judges. These issues have been resolved against Appellant by the U.S. Supreme Court and the U.S. Court of Military Appeals in *U.S. v. Weiss,* —— U.S. ——, 114 S.Ct. 752, 127 L.Ed.2d 1, 62 U.S.L.W. 4047 (U.S. Jan. 19, 1994) (No. 92–1482) and *U.S. v. Carpenter,* 37 M.J. 291 (CMA 1993). They are all rejected for that reason.

### Conclusion

We have reviewed this record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and on the basis of the entire record should be approved. Accordingly, the findings of guilty and sentence, as approved below, are affirmed.

Appellate Defense Counsel has correctly noted that the convening authority's action improperly orders the bad conduct discharge executed and the Government agrees. Counsel also advises, that no attempt has been made to actually discharge Appellant, who is on appellate leave. The convening authority

---

528, 535 (NCMR 1978). Subsequently, in a second *Booker* opinion authored by Judge Cook and dissented to by Chief Judge Fletcher, the Court of Military Appeals rescinded in part its earlier ruling, but left intact the requirement for consultation with counsel and the requirement for writ-ten waiver. *U.S. v. Booker,* 5 M.J. 246 (CMA 1978). Maybe it is time for the Court of Military Appeals to take another look at this remaining aspect of *Booker* to determine whether it, too, should be overturned.

is directed to issue a corrected action that complies with R.C.M. 1113(c)(1).

Judge FEARNOW concurs.

EDWARDS, Judge (concurring):

I write solely because of my concern about the proper issuance of lawful general orders or regulations within the Coast Guard.

As author of the principal opinion in *United States v. Webster*, 37 M.J. 670 (C.G.C.M.R. 1993), I previously have addressed the issue of waiver of appellate review of general orders or regulations allegedly issued improperly. *See Webster*, 37 M.J. at 675–679. In that case, which involved "not guilty" pleas, this Court deemed application of the waiver doctrine inappropriate. In this case, however, Appellant providently pled "guilty" to the specification he now challenges. On the basis of Appellant's provident pleas, I concur in applying waiver to his belated challenge to the lawfulness of the order involved.

Since *Webster* was decided, other panels of this Court have evinced a willingness to curtail its effect. *See United States v. Townsend*, 39 M.J. 784 (C.G.C.M.R.1994); *United States v. Ballard*, 39 M.J. 1028 (C.G.C.M.R. 1994). As stated above, in a case involving provident pleas of "guilty," I am willing to accept that waiver of the issue upon appellate review is appropriate. Nevertheless, I still believe that, in a "not guilty" plea case, our Court should tread very warily in applying the waiver doctrine.

In my view, two interrelated factors come into play. The first is the requirement under Article 66(c), UCMJ, 10 U.S.C. § 866(c), that a "Court of Military Review ... may affirm only such findings of guilty ... as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." As *Webster* holds, once the issue is raised, the Government must satisfy us that the purported lawful general order or regulation was issued properly. In a provident "guilty" plea case, the accused's own admissions on the record serve to satisfy this requirement. Accordingly, waiver, at the appellate level, properly *may* be applied in such circumstances.

The second factor is what I view as the awesome power vested in certain officials under Article 92, UCMJ, 10 U.S.C. § 892.

Article 92, UCMJ, provides that "[a]ny person subject to this chapter who—(1) violates or fails to obey any lawful general order or regulation ... shall be punished as a court-martial may direct." A general order or regulation may be

properly published by the President or the Secretary of Defense, of Transportation, or of a military department, and those orders or regulations generally applicable to the command of the officer issuing them throughout the command or a particular subdivision thereof which are issued by:

(i) an officer having general court-martial jurisdiction;

(ii) a general or flag officer in command; or

(iii) a commander superior to (i) or (ii).

¶ 16c(1)(a), Part IV, Manual for Courts–Martial, United States 1984 [hereinafter MCM].

I view this as an "awesome" power for several reasons. Under Article 92 and other provisions of the UCMJ, a single person may act in all three capacities recognized under the Constitution, *viz.*, legislative, executive, and judicial. A flag officer in command, for example, may issue a lawful general order that makes certain previously legal conduct unlawful. He or she then may direct enforcement of that order within the command. That same flag officer may refer alleged violations of the order to court-martial and subsequently take action should a conviction result. The substantive restrictions on lawful general orders and regulations are minimal. *See* ¶ 16c(1)(c) and ¶ 14c(2)(a), Part IV, MCM. On top of all of this, there is not even a requirement that the accused actually know beforehand that the conduct has been proscribed. *See* ¶ 16c(1)(d), Part IV, MCM.

This discussion in turn leads me back to the first factor, this Court's responsibilities under Article 66(c), UCMJ. In a case where an accused attacks the validity of a lawful general order or regulation for the first time on review, who, in the Coast Guard at least, should ensure that the purported order or

regulation satisfies the requirements of Article 92, UCMJ? My answer is this Court.

As already addressed, I am willing, reluctantly, to apply waiver in the "guilty" plea case because the accused, at the outset, has conceded validity of the order or regulation. However, I believe strongly that, in a "not guilty" plea case, where the accused has put the Government to the test of proving each and every element of the alleged offense (both at the trial level and *our* level), our Court has an obligation under Article 66(c) to ensure that the purported order or regulation complies in all respects with the requirements of Article 92, UCMJ, and ¶ 16, Part IV, MCM. To do anything less is to invite haphazard issuance of lawful general orders or regulations, which is what we apparently saw in two, separate instances in *Webster.* That my views may impose an additional burden upon the Government is of no consequence. Because lawful general orders and regulations "creat[e] ... what amounts to 'strict liability' for the unwary," *Webster* at 677, it is not too much to ask that they be issued properly in the first place, and that the Government be prepared to demonstrate their validity. Where, unlike *Webster,* the order or regulation has been issued by someone with apparent authority to do so, the burden upon the Government at the appellate level should prove minimal. *See, e.g., United States v. Kennedy,* 11 M.J. 669 (C.G.C.M.R.1981); *United States v. Allen,* 6 M.J. 633 (C.G.C.M.R.1978). Accordingly, at a time when our Service has embraced fully the tenets of Total Quality Management, there simply is no no excuse for a less than "quality" approach to the preparation and issuance of lawful general orders and regulations.