# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, DC

### UNITED STATES
#### v.
#### Dorin C. Townsend
#### Storekeeper First Class, U.S. Coast Guard

### CGCMG 0048
### Docket No. 981
### 7 February 1997

General Court-Martial convened by Commander, Coast Guard Maintenance and Logistics Command, Atlantic. Tried at the Office of the Commander, Coast Guard Maintenance and Logistics Command, Atlantic, Governors Island, New York, 13-16 May 1991.

| | |
|---|---|
| Military Judge: | CAPT Douglas A. Smith, USCG |
| Trial Counsel: | LT William J. Shelton, USCGR |
| Assistant Trial Counsel: | LT Sharon Fijalka, USCG |
| Defense Counsel: | LT James A. Wilson, USCGR |
| Assistant Defense Counsel | LT Rosanne Trabocchi, USCGR |
| Appellate Defense Counsel: | LT Richard R. Beyer, USCGR |
| Appellate Defense Counsel: | LCDR Allen Lotz, USCG (on initial brief) |
| Appellate Government Counsel: | LCDR Brian Binney, USCG |

### BEFORE
### PANEL TWO

### BAUM, FEARNOW, AND O'HARA

Appellate Military Judges

O'HARA, Judge:

This case is presently before this Court for a third time. When this 1991 general court-martial, composed of a military judge alone, was reviewed earlier pursuant to Article 66, Uniform Code of Military Justice (UCMJ), 10 USC 866, this Court set aside a finding of guilty of rape, but affirmed the sole remaining conviction for violating a lawful general regulation in contravention of Article 92, UCMJ, 10 USC 892, and affirmed a sentence to confinement for a year, reduction to pay grade E-1, and a bad conduct

discharge. 34 MJ 882 (CGCMR 1992). Review was initially granted by the then Court of Military Appeals on other grounds. 36 MJ 221 (CMA 1992)(daily journal). Later, the appellant was given permission to raise for the first time the validity of the general regulation. 38 MJ 227 (CMA 1993)(daily journal). The Court of Military Appeals then granted review of the newly raised issue and remanded it to us for consideration in light of this Court's decision in *U.S. v. Webster*, 37 MJ 670 (CGCMR 1993), aff'd on other grounds 40 MJ 384 (CMA 1994), which was decided subsequent to the initial review in this case. 39 MJ 37 (CMA 1993)(daily journal). In *Webster*, this Court had set aside convictions for violations of general regulations - one of the regulations being Coast Guard Personnel Manual 8-H-5 (Commandant Instruction M1000.6A) which proscribed inappropriate senior/subordinate relationships and was the basis for appellant's regulation violation in this case. During the previous remand, this Court reaffirmed our original decision, notwithstanding the intervening *Webster* opinion, but divided as to the rationale. 39 MJ 784 (CGCMR 1994). On further review, the Court of Appeals for the Armed Forces set aside our 1994 decision and again remanded the case for further review. 43 MJ 205 (1995). Chief Judge Sullivan in the lead opinion held that this Court still needed to analyze the regulation, particularly with respect to the signing official. In his concurring opinion, Judge Cox opined that appellate government counsel's failure to answer whether the order in question was a lawful general regulation suggested that it was not and, therefore, agreed that remand was appropriate to address the issue. In also concurring, Judge Wiss narrowly construed the judicial notice of the regulations taken at trial, as not including whether the general regulation was issued by the appropriate official, and consequently was not an evidentiary issue which could be waived. Judge Crawford dissented because the issue had been waived. Judge Gierke also dissented because, in the absence of contrary evidence or a defense objection, judicial notice was sufficient proof of a valid general regulation.

During this latest remand, counsel initially failed to address the Commandant's role, if any, in the issuance of the regulation, and we issued an order for additional information called for by our reading of our higher Court's principal opinions. The appellant objected by a motion to reconsider our order, arguing that we should not consider new matters outside the record. The government agreed in part, but urged that judicial economy warranted making the materials part of the appellate record in light of the decision of the Court of Appeals in remanding the case. We denied appellant's motion. Counsel then filed supplemental briefs and information as ordered and presented oral argument on the issues before us.

## THE *WEBSTER* DECISION

In *U.S. v. Webster*, 37 MJ 670 (CGCMR 1993), this Court did not apply waiver, even though the evidentiary issue was raised for the first time on appeal. In doing so, the Court was exercising its plenary review authority granted by Article 66(c), UCMJ, which permits us to decline to apply waiver when it is in the interest of justice. *U.S. v. Claxton*, 32 MJ 159, 162 (CMA 1991). The *Webster* Court was concerned with what it perceived as an apparent growing laxity in the issuance of Coast Guard-wide general orders and regulations. See also *U.S. v. Heath*, 39 MJ 1101, 1105 (CGCMR 1994)(Edwards, J., concurring). Besides declining to apply waiver, the *Webster* Court went further by looking behind the trial court's taking judicial notice of the regulations. Without some assurances from the government as to the Commandant's involvement in the issuance of the regulations, the Court, in its independent duty to

examine the record, set aside the convictions for a failure of proof under the circumstances. Therefore, it was not necessary for the Court to resolve the ultimate issue whether the regulations in question were general orders within the meaning of Article 92(1),UCMJ. It simply found that the government had not met its burden of proof in that particular case. The regulations still remained effective as general orders until properly challenged at trial and that challenge upheld on appeal.

Even before *Webster* was decided by this Court in 1993, appellate government counsel reminds us that the regulation in question in *Webster* and this case had been superseded. On 27 February 1992, the Acting Commandant personally signed Change 15 to the Coast Guard Personnel Manual, promulgating a total rewrite of Section 8-H as a punitive general order. That action removed any potential doubt that the general regulation governing inappropriate personal relationships was issued with the proper authority.

## APPLICABILITY OF *WEBSTER*

When this case was remanded to us the first time, we were directed to consider the sufficiency of the evidence supporting appellant's violation of the general regulation in light of the *Webster* decision. 39 MJ 37 (CMA 1993)(daily journal). We did and reaffirmed our original decision, notwithstanding the intervening *Webster* opinion, but divided as to the rationale. 39 MJ 784 (CGCMR 1994), set aside 43 MJ 205 (1995). The majority clarified that *Webster* was the exception, rather than the rule, in allowing a factual challenge, not raised at trial, to a judicially noticed general directive which was regular on its face. Unlike *Webster*, the question as to the regulation was not raised in this case when it was originally before this Court on appeal. In fact, civilian appellate defense counsel at that time went so far as to concede the violation of the regulation during oral argument. There were also the normal concerns about narrowing issues and finality in the appellate process. In the majority opinion, all of these factors counseled against taking the exceptional step of revisiting a conviction already found to be factually and legally sufficient. The concurring judge opined that *Webster* was erroneously decided to the extent that it did not apply waiver because of appellant's failure to raise the issue at trial.

The decision in *Webster* on the general regulations was based upon the specific circumstances of that case and is, therefore, not determinative of this case. Factual challenges to general orders and regulations normally must be properly preserved at trial to be considered on appeal. Facially valid general orders and regulations usually do not warrant the exceptional step by this Court of declining to apply waiver and demanding evidence beyond unobjected-to judicial notice.

## JUDICIAL NOTICE

As the government has forcefully argued, the crux of the matter before us is whether judicial notice of the lawful general regulation by the military judge standing alone was proper and adequate proof of that element of appellant's Article 92(1) offense. During the trial of this case, the proceedings on judicial notice of the regulation were:

MJ: Very well. Does either counsel have any additional evidence to present, before closing arguments?

TC: Yes, sir, if it please the court. The government would like to ask that the court take judicial notice, pursuant to Military Rule of Evidence 201(a) [sic] of Commandant Instruction M1000.6A. ...

MJ: Do we want to mark this as an exhibit?

TC: Please, sir.

MJ: Prosecution 2, is that where we are?

TC: Yes, sir.

MJ: ... Ok, I have, what has been marked as Prosecution Exhibit 2, which appears to be the cover page from the Personnel Manual, the promulgation letter [], pages 1 and 2, and then pages 8.H.1 [sic], 2, and 3, for a total of 6 pages.

TC: Yes, sir. I guess I should have indicated in my request asking that you take judicial notice of that particular Article in the Instruction, 8.H.5 [sic].

MJ: Mr. Wilson [the DC], do you have any objection to my taking judicial notice of the fact, [....] I assume you want me to notice that this is still in effect?

TC: Yes, sir, and was in effect at the time of the commission of the offenses.

MJ: Ok, Mr. Wilson?

DC: None, sir.

MJ: Ok. Hearing no objection from the defense counsel, I will take judicial notice that the Coast Guard Personnel Manual, Commandant Instruction M1000.6A, promulgated on the 8th of January 1988 is in effect and has been in effect since the 8th of January 1988. And I will specifically take judicial notice of paragraphs 8.H.1 [sic] through 8.H.5 [sic] as contained in the last 3 pages of this exhibit. The words "for identification" have been stricken.

R. 286-87. That is the extent of the record bearing on the lawful general regulation. Because the trial was before a military judge alone, there were no instructions on the effect of the judicial notice.

We find no error with the military judge taking judicial notice of Personnel Manual 8-H (Commandant Instruction M1000.6A) as a lawful general order, which was the basis for appellant's regulation offense. The provision violated concerned a personnel matter and was appropriately contained in the Coast Guard Personnel Manual, a Commandant Instruction (COMDTINST) with wide distribution through out the Service. The manual and Change 4 to it were promulgated in the usual directive format by the Office Chief on the Commandant's Headquarters Staff responsible to the Commandant for carrying out the personnel policies of the Coast Guard. A Coast Guard general regulation or order need not be signed by the Commandant. *U.S. v. Bartell*, 32 MJ 295 (CMA 1991). Article 8-H-5c specifically stated that "[t]his section constitutes a punitive general order under the UCMJ, and violations of its provisions are subject to prosecution under Articles 92 and 134 of the UCMJ." There was no evidence produced at trial to the contrary. Consequently on its face, Section 8-H of the Personnel Manual had the indices of a valid general regulation, even though the signing official was not a general court-martial officer or a flag officer in command. The taking of judicial notice of general orders or regulations is fully sanctioned by the Military Rules of Evidence (MRE) and the case law. MRE 201A and, e.g., *U.S. v. Williams*, 3 MJ 155 (CMA 1977). And, the judicial notice by itself is sufficient proof of the element of an Article 92(1) offense that "there was in effect a certain lawful order or regulation" as required by ¶16(b)(1)(a), Part IV, Manual for Courts-Martial, United States, 1984 (MCM). E.g., *U.S. v. Mead*, 16 MJ 270 (CMA 1983).

The appellant has not brought to our attention any error in taking judicial notice of Personnel Manual 8-H (COMDTINST M1000.6A), and we find none. But, he does argue that the judicial notice taken was a limited one. He contends that the notice was only of the contents of the provision and that they were in effect at the time of the offense, not as to the regulation's punitive or general nature. We disagree. The provision itself specifies that it is "a punitive general order". Appellant's argument would only recognize the existence of the words, but at the same time would not give them meaning and effect. This would essentially render judicial notice useless as evidence, counter to the intent of MRE 201A. Also, the contents of the provision were already before the court as evidence as Prosecution Exhibit 2; therefore, there was no need for just judicially noticing the wording of the general regulation. It was the need to affirm that the regulation was punitive and general in nature and in effect at the time of the offense which motivated the judicial notice. Moreover, since the decision in *U.S. v. Williams*, 3 MJ 155 (CMA 1977), the whole purpose of taking judicial notice with an Article 92(1) offense is to satisfy the element of the offense on the existence of an operative general order or regulation. Anything less would require additional proof, other than the judicial notice. We will not presume that the government intended to take on this additional burden of proof, unless the record clearly indicates it. In the absence of any indication that the judicial notice was limited, we believe that the matter judicially noticed may be considered fully as evidence. In this case, the military judge could consider his judicial notice of Section 8-H of the Personnel Manual as fulfilling the need to establish that it was in fact a valid and effective, punitive, general regulation. See *U.S. v. Friedman*, 14 MJ 865 (CGCMR 1982). That conclusion would normally end our inquiry, but the circumstances of the second remand of this case dictate that we explore this matter further, particularly with respect to the signing official.

## SIGNATURE AUTHORITY

The *Webster* opinion found the lack of the Commandant's signature on the regulation raised some ambiguity. That is true, but it does not preclude it from being a general regulation. *U.S. v. Bartell*, 32 MJ 295 (CMA 1991). Unless signed by the head of the command, the nature of the signature authority is always ambiguous. That ambiguity standing alone does not draw into question the validity of a general regulation, particularly when the document is specifically denominated as such.

The authority to sign directives, correspondence, and other communications is inherent in command. Otherwise, no one would be able to speak in writing for the unit. Whatever authority has been vested in the command by statute, regulation, directive, etc., is within the command's signature authority. See United States Coast Guard Regulations 2-1-2A (COMDTINST M5000.3 series) (directives)(hereinafter CG Regulations). Unless specifically curtailed, this authority is delegable. CG Regulations 7-1-9; Coast Guard Correspondence Manual 2.P.2 (COMDTINST M5216.4 series); *U.S. v. DeBarrows*, 41 MJ 710, 723 n.23 (C.G.Ct.Crim.App. 1995)(O'Hara, J., concurring)("implied prohibitions against delegations are no longer favored in the law"). As recognized by Coast Guard Regulations 7-1-9, the custom is to sign "By direction" when a member is acting under delegated authority and to sign "Acting" when temporarily succeeding to command in the absence of the individual normally in command. An exception is provided for principal deputies who may sign using their title, such as "Chief of Staff" or "Executive Officer", even though they are signing as a delegatee. CG Regulations 7-1-9E. The Commandant's authority to sign and issue rules, orders, and instructions is reiterated at Coast Guard Regulation 2-1-1, reprinted in *U.S. v. Townsend*, 43 MJ 205, 209 (1995). The Commandant has delegated signature authority to his staff in a fashion similar to that used by subordinate commands under Coast Guard Regulation 7-1-9. See generally Delegation of Authority (Headquarters Instruction M5402.3D). As with principal deputies in the field, the practice at Headquarters is for flag-rank staff to sign using their title only; the rest of the staff generally signs "By direction".

Because the breadth of any delegation is a command prerogative, the extent of the discretion actually exercised by the individual signing a document as a delegatee in a particular case is always unclear. It can vary from the ability to act autonomously with the full authority and discretion of the command to merely ministerial acts of signing and issuing a document already approved in every detail by the command. Even where the signing official could normally exercise broad discretion, the command is free to interject itself into a particular instance and limit the signing official's freedom of action. Therefore, signing "By direction" (including by official title without independent signature authority) merely indicates to the reader that the signer, although not in charge of the unit, is in some way authorized to speak for the command.

The Commandant in Delegation of Authority 5-B-2.c (HQINST M5402.3D) specifically permits Headquarters Office Chiefs to issue Commandant Instructions. If the signature authority for this general regulation had been exercised by someone in a position further remote from the Commandant, the Court would be more justified in questioning whether it had been issued as a result of the Commandant's personal decision. Moreover, Personnel Manual 8-H-5c specifically stated that "[t]his section constitutes a punitive general order under the UCMJ". That statement indicates that the signing official had the necessary imprimatur from the Commandant to sign the regulation on his behalf. Given the close interaction between the Commandant and his senior staff, as with field commanders and their principal

deputies, it would be a total aberration for a trusted senior assistant to issue a general regulation *ultra vires*, without any direction from the Commandant. When we have before us a regulation, which affirmatively states that it is intended to be a punitive general regulation, signed by one with signature authority to sign for the Commandant, we have a facially valid regulation until evidence to the contrary is produced.

## PROMULGATION OF THE GENERAL REGULATION

Even though we believe the question as to the general nature of the regulation in this case is resolved on the grounds of waiver and the judicially noticed evidence of record, we have been directed by the majority of the Court in *U.S. v. Townsend*, 43 MJ 205 (1995), because of the *Webster* decision, to address whether Coast Guard Personnel Manual 8-H-5 (COMDTINST M1000.6A) at the time of the offense was, in fact, a valid general order. The Court of Appeals' majority, in remanding this case, chose not to rely on waiver or judicial notice, as articulated in the dissenting opinions of Judges Crawford and Gierke. Therefore, we concluded that more evidence was desired by placing the burden on the government in this case as we did in *Webster*. When the initial briefs by counsel failed to adequately address the remand question, we directed the government to advise the Court whether those personnel who were likely involved in the promulgation of this provision could shed any light on this issue. The appellant objected by a motion to reconsider our order, arguing that it was improper for us to consider matters outside the record to support a conviction. The government agreed, but urged that judicial economy warranted inclusion of the materials, already obtained in response to our order, as part of the appellate record. We denied appellant's motion, believing that failing to consider additional evidence would not satisfy the remand order.

Subsequently, the government in its supplemental brief provided several affidavits, including one from the then Commandant, Admiral (ADM) Paul A. Yost, Jr., and another from the then Chief, Office of Personnel and Training, Rear Admiral (RADM) Thomas T. Matteson. In his supplemental reply, the appellant reiterated his objection to considering any additional information on appeal, questioned the probative value of the information supplied by the government, and submitted an earlier affidavit by ADM Yost, used in a court-martial following the *Webster* decision, and the trial judge's ruling that the affidavit was insufficient to demonstrate that Personnel Manual 8-H was issued under the Commandant's authority in light of *Webster*.

While recognizing the inherent limitations with evidence gathering at the appellate level (see footnote 13, *infra*), the materials provided by counsel do shed some light on the promulgation of Section 8-H of the Personnel Manual. During his tenure as Commandant from 1986 to 1990, ADM Yost was faced with enforcing standards concerning inappropriate senior-junior relations, as were all of the Services. The case law at the time underscores this concern. E.g., *U.S. v. Johanns*, 20 MJ 155 (CMA 1985)(affirming a decision finding a lack of an Air Force custom with respect to some forms of fraternization); see generally *U.S. v. Boyett*, 42 MJ 150 (1995)(discussing fraternization and *Johanns* and the subsequent cases). ADM Yost directed his staff to develop a clear and enforceable policy regulating senior-junior relationships and monitored that development from 1987 to April 1989 when it was finally issued. The development of this Commandant policy fell upon RADM Matteson, as the Chief of the then Office of

Personnel, and his staff. Although unable to recall the specifics, both ADM Yost and RADM Matteson remember having discussions during the policy's development in which the Commandant laid out his views on the matter and his concurrence with the recommendation that a violation of the policy should subject the member to punishment under the UCMJ. Both officers were confident that the Commandant had reviewed and approved Section 8-H of the Personnel Manual before it was published. The Notice actually promulgating Section 8-H was signed by Captain G.F. Woolover, as the Acting Chief of the Office of Personnel and Training (formerly the Office of Personnel), who at the time was RADM Matteson's Deputy. ADM Yost, in preparing his affidavit, reviewed Change 4 to the Personnel Manual which promulgated Section 8-H, and he felt that it reflected his views communicated to RADM Matteson and others before the regulation was issued in 1989. ADM Yost's earlier affidavit provided by the defense is less detailed than the more recent one submitted by the government, but it does not conflict with the later more extensive affidavit.

A Coast Guard general regulation or order need not be signed by the Commandant personally; Article 92 (1) only requires that the regulation or order be issued as a result of a personal decision of the Commandant. *U.S. v. Bartell*, 32 MJ 295 (CMA 1991). Although ADM Yost did not sign the Notice which promulgated Section 8-H of the Personnel Manual, he oversaw its issuance. He did not just simply direct some regulation be issued by his staff. He took an active and continuous interest in its development. He personally made the decision that the regulation would be a punitive general order. He was generally aware of, and approved, the contents of Section 8-H before it was published in 1989. This information provided by counsel clarifies that the regulation was issued at the Commandant's personal direction.

Appellant argues that we cannot consider this post-trial information since it amounts to supplementing the factual basis for the conviction. The appellant misapprehends the posture of his case at this point. The information is not being considered to sustain his conviction for violating a general regulation, which otherwise could not stand without it. See *U.S. v. Mason*, ___MJ___, No. 96-5004, slip op. at 2 (Jan. 22, 1997)("[*U.S. v. Bethea*, 22 USCMA 223, 46 CMR 223 (1973)] limits review under Article 66 (c) to review of the facts, testimony, and evidence presented at the trial, and precludes a Court of Criminal Appeals from considering 'extra-record' matters when making determinations of guilt, innocence, and sentence appropriateness."). As discussed above, the evidence, including the judicial notice of the regulation, adduced at trial was sufficient to sustain appellant's conviction. The only thing being examined now is the question raised by our superior Court - whether the Commandant was personally involved in the issuance of the regulation in question. Having received an answer, our limited foray outside the trial record comes to a close. The additional information submitted to us on appeal is being considered solely to address the question presented to us on remand, not for guilt, innocence, or sentence appropriateness. And, even if we could consider the additional evidence in determining appellant's guilt or innocence, nothing in the additional information presented undermines the trial court's taking of judicial notice of Coast Guard Personnel Manual 8-H-5 (COMDTINST M1000.6A), which was the basis for appellant's regulation violation. Consequently, we decline to disturb appellant's legally and factually sufficient conviction and reaffirm our original decision in this case, *U.S. v. Townsend*, 34 MJ 882 (CGCMR 1992).

Chief Judge BAUM concurs.

Judge FEARNOW (concurring in part and in the result):

Although I can understand why my fellow judges have interpreted and responded to the decision of the Court of Appeals for the Armed Forces in *U.S. v. Townsend,* 43 MJ 205 (1995) (*Townsend III)*, in the way they have, I do not agree with their understanding of the views provided to us by our superior court concerning extra-record material. The seeds for our difference in interpretation are planted in the multiple opinions provided in *Townsend III* and the somewhat varying direction provided in each of those opinions. In an attempt to clarify what I perceive to be the undertaking submitted to us by the remand of this case for a second time, I will specify what I see as the significant points of the history of the case and the specific issue presently before us for resolution.

The Court of Appeals has characterized our holding in *U.S. v. Webster,* 37 MJ 670 (CGCMR 1993), as a decision that Article 8-H-5, U.S. Coast Guard Personnel Manual, "was not sufficiently shown in that case to be properly promulgated by a qualified officer." *Townsend III,* 43 MJ at 206. When, in *U.S. v. Townsend* 39 MJ 784 (CGCMR 1994)(*Townsend II*), we reviewed this case for the first time on remand from the Court of Appeals under an order that it be considered in light of the holding in *Webster,* the Court of Appeals believes we distinguished *Webster* and found that its holding that the regulation at issue was not sufficiently proven to be a valid general regulation, did not apply in *Townsend* because appellant's counsel had affirmatively waived any issues concerning the regulatory offense during oral argument. *Townsend III,* 43 MJ at 206. Simply stated, the Court of Appeals, in again remanding this case, is indicating that this Court's invocation of waiver in the remand decision is not an acceptable basis for refusing to apply our W*ebster* holding that Article 8-H-5 is not proven to be a lawful general regulation. To uphold the identical regulation that is the basis for the remaining finding of guilty in *Townsend,* it must be supported by facts in the record showing it was properly promulgated.

In his lead opinion, Judge Sullivan states that after our decision not to follow *Webster,* the issue presented to the Court of Appeals in its subsequent review of *Townsend,* is "whether Article 8-H-5, U.S. Coast Guard Personnel Manual, Commandant Instruction M.1000.6A, as it existed on November 20, 1990, was part of a lawful general order or regulation." Of more particular concern is "whether the promulgating authority for the violated regulation was a commander recognized in paragraph 16c(1)(a)" of the MCM. Because, in his view, this Court did not "analyze appropriate regulations in the Coast Guard to determine the significance of the signature" of the officer signing the promulgating order for the regulation, Judge Sullivan directs us on this second remand to "answer the regulatory question that was left unanswered in" our first remand opinion.

Judge Cox states that following our remand opinion the issue is simply whether or not "the regulation is a lawful general regulation issued by one empowered to make such edicts." He indicates that his conclusion is that the answer to that question is no, but that he can join in the lead opinion's decision to remand that question again to the Coast Guard Court of Criminal Appeals. *Townsend III,* 43 MJ at 210.

In his concurring opinion, Judge Wiss concluded our responsibility in again considering this appeal is "simply to consider whether, in light of [the Coast Guard Court of Criminal Appeals] decision in *U.S. v. Webster,* ) there is evidence that the regulation in question was issued by direction of the Commandant." *Townsend III,* 43 MJ at 212.

At the risk of undue repetition, I believe the three judges in the majority are saying the same thing in slightly varying ways; i.e., ' [I]f the order found invalid in *Webster** for failure of proof is to be sustained in *Townsend,* identify the evidence that proves the Commandant of the Coast Guard directed that the order be issued.' This interpretation is in my opinion confirmed by Judge Gierke's dissenting opinion, where he argued against another remand of the case. He stated that "[I]f the evidence is legally insufficient, [the Court of Criminal Appeals for the Armed Forces] should set aside the findings of guilty. A failure of proof cannot be cured by remand." *Townsend III,* 43 MJ at 212.

I continue to believe that the fact that the order under consideration stated on its face that it was a lawful general order, combined with the presumption of regularity an order such as this is generally entitled to, is sufficient to prove beyond a reasonable doubt that the Commandant of the Coast Guard directed that it be issued. However, if as the Court of Appeals for the Armed Forces majority opinions in *Townsend III* seem to imply, this is an unacceptable basis upon which to sustain the conviction, then there are no other facts available in the record of trial to support such a finding. And there is nothing this Court can do on remand to cure that lack of proof. Even if we have the power to conduct a factual review of the case under Article 66(c), UCMJ, we are limited to the evidence of record in conducting such a review. *U.S. v. Bethea,* 22 USCMA 223, 46 CMR 223 (1973*); U.S. v. Mason,* ___MJ___, No. 96-5004, slip op. at 2 (Jan. 22, 1997*).*

My brother judges on this Court have very understandably inferred that this case would not have been remanded again unless the Court of Criminal Appeals for the Armed Forces desired that this Court attempt to obtain additional facts to supplement the record on the question of the Commandant's involvement in issuing the general order. They believe returning the case to us for another review of the record without the direction to seek additional information would be a somewhat futile step and one the Court of Appeals for the Armed Forces would not undertake. Subsequently, affidavits from Admiral Yost and other officers involved in issuing the regulation have been obtained and appended to the appellate record. The principal opinion considers these affidavits, but only for the purpose of responding to what Judge O'Hara and Chief Judge Baum believe is the request, if not direction, of our superior Court. Because I do not believe we have the authority to retry a case based on affidavits, and the Court of Criminal Appeals for the Armed Forces could not grant us such authority even if they intended to, I cannot join that part of the opinion. As indicated above however, I do not think the Court of Appeals for the Armed Forces intended that we go beyond the record to respond to their question of whether the Commandant was personally involved in directing issuance of the order. Their direction to us can and should be read consistently with the rule of *Bethea* and *Mason, supra.*

Because I find that the record in this case is sufficient to affirm the conviction, I join that part of the lead opinion that reaches the same conclusion. However, if as previously indicated in their decision

remanding this case to us, the majority of the Court of Appeals for the Armed Forces does not believe the existing record is sufficient, the newly developed information cannot be considered and reversal for failure of proof would seem to be the required result when this record is returned for their consideration a third time.

For the Court,

R. HAMISH WAUGH
Clerk of the Court