UNITED STATES, Appellee,

v.

Dorin C. TOWNSEND, Storekeeper First Class, U.S. Coast Guard, Appellant.

No. 68037.
Crim.App. No. 981.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 4, 1997.

Decided Sept. 23, 1998.

For Appellant: *Lieutenant Richard R. Beyer* (argued); *Lieutenant Sandra K. Selman.*

For Appellee: *Lieutenant Benes Z. Aldana* (argued); *Lieutenant Commander Brian F. Binney* and *Lieutenant William G. Rospars.*

*Opinion of the Court*

SULLIVAN, Judge:

In May of 1991, a general court-martial found appellant guilty of rape and violating a lawful general regulation concerning fraternization, in violation of Articles 120 and 92, Uniform Code of Military Justice, 10 USC §§ 920 and 892, respectively. He was sentenced by the military judge to a dishonorable discharge, confinement for 2 years, and reduction to pay grade E–1. The Court of Military Review (now the Court of Criminal Appeals) set aside appellant's rape conviction but affirmed his conviction for violating a lawful general regulation. It then reduced his sentence to a bad-conduct discharge, confinement for one year, and reduction to E–1. 34 MJ 882, 887 (1992) (*Townsend I*).

Our Court twice remanded this case to the Coast Guard court for further consideration of the legality of appellant's remaining conviction for disobeying a lawful general regulation. 39 MJ 37 (1993); 43 MJ 205 (1995). After each reconsideration, the military appellate court below affirmed the findings of guilty to the general-regulation violation and the reduced sentence. *See* 39 MJ 784, 787 (1994) (*Townsend II*), and 46 MJ 517 (1997) (*Townsend III*). On March 14, 1997, the

record of trial in this case was returned to this Court and, on September 29, 1997, after additional briefs were filed, oral argument was ordered. Finally, on November 4, 1997, oral argument was held in this case.

Although returned at our direction, no particular issue was granted or specified for this last oral argument. However, our concern again is the legality of appellant's conviction under Article 92 of the Uniform Code for violating Article 8–H–5,[1] U.S. Coast Guard Personnel Manual, Commandant Instruction M1000.6A (in effect on Nov. 20, 1990).[2] Appellant pleaded not guilty to that charge, and he did not file a waiver of appellate review as provided in Article 61, UCMJ, 10 USC § 861 (1983). Moreover, in a footnote to his initial pleading to this Court, Supplement to Petition at 2 n.1 (June 5, 1992), he, for the first time, questioned whether the above regulation was a general regulation for purposes of prosecution under Article 92. Finally, while his case was initially pending before our Court on other granted issues,[3] he formally petitioned this Court for review of an additional issue. It stated:

> **WHETHER THE EVIDENCE IS LE-GALLY SUFFICIENT TO AFFIRM THE SOLE REMAINING FINDING OF GUILTY OF VIOLATION OF A LAW-FUL GENERAL REGULATION WHEN THE COAST GUARD COURT OF MILI-TARY REVIEW HAS DETERMINED THAT THE REGULATION IN QUES-TION IS NOT A LAWFUL GENERAL REGULATION.**

(Emphasis added.)

On September 30, 1993, we granted review on this additional issue and "remand[ed] to the United States Coast Guard Court of Military Review for consideration ... in light of [its recent decision in] *United States v. Webster*, 37 MJ 670 (CGCMR 1993)."[4] 39 MJ 37. On September 29, 1995, we again remanded this case to that same court for further consideration. 43 MJ 205.

— — —

The particular issue before this Court is whether legally sufficient evidence was admitted in this case to support appellant's conviction for violating a lawful *general* regulation. *See generally Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *but see United States v. Bunch*, 3 USCMA 186, 189–90, 11 CMR 186, 189–90 (1953) (if order alleged to be issued by commander not authorized by service regulations to issue general orders, then finding of guilty legally insufficient). Appellant, however, asserts that the Coast Guard Court of Military Review previously decided this same legal question considering the same evidence presented in his case in *Webster*. Citing the

---

1. 8–H–5 ACTION
   a. Personal relationships between senior and junior members of the Service which cause, or appear to cause, partiality or unfairness, involve the improper use of rank or position for personal gain, or have a clearly demonstrated impact on discipline, authority, or morale are prohibited.
   b. Commanding officers and officers in charge are responsible for determining whether any personal relationship appearing to be contrary to the provisions of this section is improper and taking remedial action if necessary.
   c. This section constitutes a punitive general order under the UCMJ, and violations of its provisions are subject to prosecution under Articles 92 and 134 of the UCMJ.

2. Prosecution Exhibit 2 shows that on January 8, 1988, "T.T. Matteson, Chief, Office of Personnel" signed Commandant Instruction M1000.6A, which distributed the Coast Guard Personnel Manual of 1988 to various commands through-

out the Coast Guard. The Coast Guard court noted, however, that the version of the violated regulation in effect at the time of appellant's alleged offense "was part of Change 4 to the Personnel Manual" of 1988; "[t]he Notice promulgating Change 4 was signed by ... G.F. Woolover, as the Acting Chief of the Office of Personnel and Training." 46 MJ 517, 520 n. 6 (1997).

3. Two legal questions were granted review (36 MJ 221) and subsequently were resolved against appellant on the basis of the Supreme Court's decision in *Weiss v. United States*, 510 U.S. 163, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994).

4. *See United States v. Remchak*, Dkt. No. 1009 (unpublished opinion) (CGCMR 11 Jun 93)(reversal of findings of guilty based on *United States v. Webster*, 37 MJ 670 (1993)); *but see United States v. Heath*, 39 MJ 1101, 1102 (CGCMR 1994); *United States v. Ballard*, 39 MJ 1028, 1029 (CGCMR 1994).

Supreme Court's retroactivity decisions in *Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), and *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), he contends that he was legally entitled to retroactive application of *Webster* in his case and resolution of the legal-sufficiency question in his favor.

## I

### *Retroactivity of Webster*

■ Our initial response to appellant's argument is that his case is no longer before the Court of Military Review, but is now before a superior court, the United States Court of Appeals for the Armed Forces. *See United States v. Boudreaux,* 35 MJ 291, 295 (CMA 1992), *cert. denied,* 507 U.S. 952, 113 S.Ct. 1365, 122 L.Ed.2d 743 (1993). We are not bound by an intermediate appellate court's holding on the legal sufficiency of evidence. *See United States v. Byers,* 40 MJ 321, 323 (CMA 1994); *cf. United States v. Burris,* 21 MJ 140 (CMA 1985). We also note that the Supreme Court in *Griffith v. Kentucky* and *Johnson v. United States,* both *supra,* considered the retroactivity of its own decisions on other cases pending direct review before it or subordinate courts. *See* 40 MJ at 321 n. 6; *United States v. Avila,* 27 MJ 62 (CMA 1988) (retroactivity of Supreme Court decision in *Solorio v. United States,* 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987)). We did not write the *Webster* decision or approve the dismissal action by a panel of the Coast Guard Court of Military Review, a subordinate appellate court. *See* Art. 66, UCMJ, 10 USC § 866. Moreover, no statute, judicial decision, court rule, or other legal authority has been proffered by appellant extending *Griffith* and *Johnson* to permit lower court decisions to bind a superior appellate court in these circumstances. *See generally* Art. 67, UCMJ, 10 USC § 867 (1994); *see* 18 *Moore's Federal Practice* § 134.02[1][c] at 134–15 to 134–17 (3d ed.1997).

Admittedly, the general rule of practice for federal civilian courts of appeals is that a panel decision of a Court of Appeals binds a subsequent panel in that same circuit on the same question of law. *See Moore's Federal Practice, supra* § 134.02[1][a] at 134–13; *see generally Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) ("various circuits differ somewhat in the extent to which they treat their own decisions as binding on themselves"); *cf.* J. Purver and L. Taylor, *Handling Criminal Appeals* § 185 at 357 (1980) (precedential value of lower court opinions a matter for rule by jurisdiction); *e.g., United States v. Steele,* 117 F.3d 1231, 1235 (11th Cir.1997) (citing law of the circuit); *United States v. Martin,* 116 F.3d 702, 704 (3d Cir.1997) (citing Third Circuit Internal Operating Procedure Rule). Professor Wright states the rule as follows:

### § 3506. The Courts of Appeals

The courts of appeals generally follow a practice that one panel is bound by the decision of another panel of that court. Only the court sitting en banc can overrule the panel decision. This rule does not apply if an intervening Supreme Court decision casts doubt on the prior ruling or perhaps if newly emergent authority, even though not directly controlling, offers a convincing reason for believing that the earlier panel would change its course.

C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure* § 3506 at 5 (1998 Supp.) (footnotes omitted). Moreover, Article 66(a) and Rule 17 of the Joint Court of Military Review Rules (22 MJ CXXVII (1985)) establish that *en banc* reconsideration is the appropriate method to overrule a panel decision, at least when that panel decision is still on direct review. *See United States v. Felix,* 40 MJ 356 (CMA 1994). However, this Court has never held that Article 66(a) or any other legal authority requires that we ensure a panel decision of an intermediate military appellate court is followed by another panel of that same court in a subsequent case. We need not do so today.

■ Assuming the rule of retroactivity, or alternatively, the rule of *stare decisis,*[5] is

---

5. *See generally* E. Re, *Brief Writing and Oral Argument* 78 (5th ed.1983) (quoting Kent, *Commentaries* 475 (12th ed. 1896)):

applicable to panel decisions of a Court of Military Review, appellant's argument cannot succeed. It is generally held that decisions of law, not those of fact, are given retroactive effect or binding effect under the doctrine of *stare decisis. See* 18 *Moore's Federal Practice, supra,* § 134.04[2] at 134–34; *cf. id.,* § 134.05[3] at 134–38. For example, in *Griffith v. Kentucky* and *Johnson v. United States,* both *supra,* new rules of constitutional procedure were announced. We have also recognized this *"de jure"* limitation on the doctrine of *stare decisis* as applied to decisions of our Court. *See United States v. Flowers,* 26 MJ 463, 466–67 (CMA 1988) (Everett, C.J., concurring in the result); *United States v. Gutierrez,* 11 MJ 122, 123 (CMA 1981). Accordingly, the success of appellant's retroactivity claim also depends upon the nature of the court's action in *Webster, i.e.,* whether it decided a question of law.

■ Turning to the decision of the Coast Guard Court of Criminal Appeals in *Webster,* we admit great difficulty in discerning the precise nature of its action. Despite use of language which might suggest a legal-sufficiency analysis,[6] we are not sure that a legal holding on evidentiary sufficiency was reached in that case. *See United States v. Turner,* 25 MJ 324, 325 (CMA 1987) (not uncommon for Courts of Military Review to use language which might create confusion concerning action of court, *i.e.,* deciding legal or factual sufficiency); *cf. United States v. Gillis,* 942 F.2d 707, 711 (10th Cir.1991) (clear holding on legal sufficiency). Instead, it is quite possible that the Coast Guard Court of Military Review may have acted in the *Webster* case either on the basis of its

unique factfinding power (*see United States v. Mason,* 45 MJ 483 (1997)), or in the exercise of some court supervisory powers (*see Dettinger v. United States,* 7 MJ 216, 220 (CMA 1979)). In this regard, we note that the panel which last acted in appellant's case construed *Webster* as not establishing any point of law, and we normally defer to a service court on the proper interpretation of its actions. *See United States v. Jacintho,* 21 MJ 356, 358 (CMA 1986). Accordingly, we can reject appellant's retroactivity argument on this basis.

Assuming a legal holding in *Webster,* the doctrine of *stare decisis* does not establish a rigid requirement that mandates absolute adherence to prior decisions. A court, upon further reflection, may decide to modify or even reject a precedent based upon reasoned reflection, particularly when requested to review the matter by a superior court. *See United States v. Carter,* 25 MJ 471, 473 (CMA 1988). This in effect may have happened in this case.

During its initial consideration of the regulation in *Webster,* the then Court of Military Review emphasized that it was willing to overlook appellant's waiver of objection to judicial notice because the issue had service-wide implications throughout the Coast Guard, a matter which we noted in our prior opinion. 43 MJ at 207, citing *Webster,* 37 MJ at 677. In deciding to disregard judicial notice, the Court of Military Review in *Webster* also eliminated the only evidence that would have supported the existence of a lawful general regulation and emphasized the absence of evidence that would support a determination that the regulation was directed by a person authorized to issue a general

---

A solemn decision upon a point of law, arising in any given case, becomes an authority in a like case, because it is the highest evidence which we can have of the law applicable to the subject, and the judges are bound to follow that decision so long as it stands unreversed, unless it can be shown that the law was misunderstood or misapplied in that particular case.

**6.** The key words in the *Webster* decision which caused confusion were "the failure of proof of one of the elements of the offense." It is axiomatic that the prosecution has the burden of

proof on each and every element of the offense as a matter of military law. Art. 51(c)(4), UCMJ, 10 USC § 851(c)(4), and RCM 920(e)(5)(D), Manual for Courts–Martial, United States, 1984. Burden of proof means not only the burden of producing sufficient evidence to convict, but also "the burden of persuading the trier of fact that the alleged fact is true." II *McCormick on Evidence* § 336 at 425 (4th ed.1992). The former principle is associated with legal sufficiency. The latter principle applied to the Coast Guard Court of Military Review when it was acting as a factfinder under Article 66(c), UCMJ, 10 USC § 866(c).

regulation. *See* 37 MJ at 679. Because such evidence was necessary to prove an element of the offense, the absence of such evidence meant that the evidence supporting the charge was insufficient as a matter of law.

In the present case, our remand expressly discussed the holding of the court below in *Webster*, 43 MJ at 206. The effect of our remand required the Court of Criminal Appeals to reexamine the same issue which it had decided in *Webster*, where the court concluded that the regulation was not shown to be a lawful general regulation. We noted in our second remand action in *Townsend* that the Court of Military Review "on remand did not analyze appropriate regulations in the Coast Guard to determine the significance of the signature of the Acting Chief . . .," and we asked the court to "answer the regulatory question left unanswered in its remand opinion." 43 MJ at 207.

In response to our opinion, the court below looked at the development of the regulation, in light of Coast Guard practice, and determined that it was a lawful general regulation; the effect was to overrule *Webster* as a result of our direction that they consider the regulation in light of *Webster*. 46 MJ 517. We accept their analysis of internal Coast Guard practices, *see United States v. Jacintho*, 21 MJ 356, 358 (CMA 1986). Under these circumstances, *Webster* no longer expresses the state of the law in the Coast Guard, and we reject appellant's retroactivity argument.

## II

### *Sufficiency of Evidence*

Despite our rejection of appellant's retroactivity argument, we still must review the record in this case to determine whether legally sufficient evidence was admitted to support his conviction. *United States v. Watson*, 31 MJ 49, 53 (CMA 1990). We agree with the Court of Criminal Appeals that the evidence in this record is legally sufficient to support appellant's conviction for disobedience of a lawful general regulation.[7]

---

7. We disagree with the lower court that we implicitly ordered it to gather information outside the record to determine who issued the regulation at issue in this case. *See United States v.*

Article 92(1) prescribes the violation or the "failure to obey any lawful *general* order or regulation." (Emphasis added.) General orders or regulations are those "generally applicable to the command of the officer issuing them throughout the command or a particular subdivision thereof which are issued by: (i) an officer having general court-martial jurisdiction; (ii) a general or flag officer in command; or (iii) a commander superior to (i) or (ii)." Para. 16c(1)(a), Part IV, Manual, *supra*. The Government has the burden to introduce sufficient evidence from which a reasonable factfinder can find beyond a reasonable doubt that this was a general regulation or order. *See* Art. 51(c)(4), UCMJ, 10 USC § 851(c)(4); *Jackson, supra* at 319, 99 S.Ct. 2781.

In appellant's case, the prosecution requested the military judge to take judicial notice that Article 8–H–5, United States Coast Guard Personnel Manual, Commandant Instruction M1000.6A, was in effect at the time of appellant's alleged offenses. *See* Mil.R.Evid. 201 and 201A, Manual, *supra*. He also introduced, as prosecution exhibit 2, a copy of the Manual promulgation letter and the pertinent provisions of the above-noted regulation. This regulation on its face is entitled, "Commandant Instruction," and the mailing address provided is, "Commandant (G–P–1/5) United States Coast Guard." Moreover, Section 8–H–5, the section allegedly violated by appellant, states: "c. This section constitutes a punitive general order under the UCMJ, and violations of its provisions are subject to prosecution under Article 92 and 134 of the UCMJ." Finally, defense counsel expressly stated that he had no objection to the judge's taking judicial notice of this regulation previously referred to as a Commandant Instruction.

Admittedly, pros. ex. 2 contains a publication memorandum signed by "T.T. Matteson, Chief, Office of Personnel," directing "Area and district commanders, commanders of maintenance and logistic commands,

---

*Bethea*, 22 USCMA 223, 46 CMR 223 (1973). We have not considered those materials in our review of this case. *See United States v. Mason*, 45 MJ 483 (1997).

unit commanding officers, and Commander, CG Activities Europe [to] comply with the contents of this manual." (¶ 3.) In light of applicable Coast Guard Regulations, not evidenced at this trial, the form of this signature might create some ambiguity as to the issuing authority, especially for regulatory specialists such as a Court of Military Review.[8] *See* Art. 7–1–9E, Coast Guard Regulations, Commandant Instruction M5000.3B (22 Sept. 1992).[9] Moreover, under these same unevidenced regulations, the signature of "G.F. Woolever, Acting Chief, Office of Personnel and Training," on the order publishing the applicable change to that Manual might also raise some questions.[10] *E.g., United States v. Breault,* 30 MJ 833, 837–38 (NMCMR 1990). These unevidenced regulatory possibilities, however, pale before the overwhelming evidence in this case that the Commandant of the Coast Guard issued these regulations. *See United States v. Bartell,* 32 MJ 295 (CMA 1991); *United States v. Jette,* 25 MJ 16 (CMA 1987); *United States v. Masusock,* 1 USCMA 32, 35, 1 CMR 32, 35 (1951) ("evidence to the contrary" required to preclude presumption of regularity). Accordingly, we conclude that the evidence presented in this case was legally sufficient to support appellant's conviction for violating a general regulation. *See generally United States v. Johnson,* 10 USCMA 630, 633–34, 28 CMR 196, 199–200 (1959); *cf. Bunch,* 3 USCMA at 190, 11 CMR at 190 (regulatory disqualification unequivocally established on face of record).

## III

### *Conclusion*

The bottom line in this case is that Article 8–H–5, U.S. Coast Guard Personnel Manual, Commandant Instruction M1000.6A, was shown to be a lawful general regulation issued by the Commandant of the Coast Guard. The Coast Guard Court of Military Review, as a matter of equity or law,[11] afforded Webster an apparent windfall. *See Watson,* 31 MJ at 53. We had no opportunity to directly review the court panel's action in *Webster* because of the limited scope of

---

**8.** *See generally United States v. Roach,* 29 MJ 33, 36 (CMA 1989); *United States v. Carlisle,* 25 MJ 426 (CMA 1988).

**9.** This Article states:

> 7–1–9 Signing Official Correspondence
>
> A. *Area, district and MLC [Maintenance and Logistics Commands] commanders* and commanding officers of Headquarters units may authorize officers or chief petty officers of their staffs to sign correspondence and reports "By direction." In addition, they may authorize first class petty officers of their staffs to sign personnel, pay, and travel documents "By direction," as defined in the PMIS/JUMPS [Personnel or Finance] Manuals.
>
> B. Commanding Officers or officers in charge may designate officers or chief petty officers within their commands to approve, by their direction, correspondence, routine papers, vouchers, payrolls, returns, and reports not requiring administrative discretion by the commanding officer. In addition, they may authorize first class petty officers of their staffs to sign personnel, pay, and travel documents "By direction" as defined in the PMIS/JUMPS Manuals.
>
> C. The commanding officer or officer in charge shall sign all official correspondence addressed to higher authority relating to the mission or efficiency of the command or activity.
>
> D. Official correspondence which is required by law or regulation to be signed by an officer in the execution of the duties of the officer shall be signed personally by that officer.
>
> E. In official correspondence signed by subordinate officers for a senior, the words "Chief of Staff," "Executive Officer," or "By direction" as appropriate shall appear below the signature of the subordinate officer. In the business form letter, the grade of the signing official, the functional title, such as "Chief of Staff", or "Executive Officer", or "By direction of (appropriate commander)" shall appear below the signature.
>
> F. When an officer, temporarily succeeding to command, signs official correspondence, the word "Acting" shall appear below the signature.

**10.** *See* n.9, *supra.*

**11.** The action of the majority in *United States v. Webster,* 37 MJ 670 (CGCMR 1993), was apparently motivated by its "concern about the proper issuance of lawful general orders or regulations within the Coast Guard." *United States v. Heath,* 39 MJ 1101, 1105 (CGCMR 1994) (Edwards, J., concurring); *see also United States v. Bunting,* 6 USCMA 170, 175, 19 CMR 296, 301 (1955) (board of review may not exercise its factfinding power in a manner contrary to what "all reasonable men" would conclude).

our appellate review power. *See* Art. 67(c); *see also United States v. Claxton,* 32 MJ 159, 162 (CMA 1991). In any event, since that panel decision established no binding rule of law, neither the Coast Guard Court of Criminal Appeals nor this Court is required to reach a similar result as a matter of law in appellant's case. We hold that the evidence admitted in this case was legally sufficient to support this conviction, so we need say no more.

The 1997 decision of the United States Coast Guard Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges CRAWFORD, GIERKE, and EFFRON concur.